UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MATTHEW R. CHISTE, DONALD SCHROUD, and
MARC GUTMAN,

                                 Plaintiffs,

                 - against -

PRICELINE.COM, INC., LOWESTFARE.COM, INC., and
TRAVELWEB, LLC,

                             Defendants.

------------------------------------------------------------------X

Case No. _____

**CLASS ACTION
COMPLAINT**

RECEIVED
DEC 10 2008
U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiffs, by their undersigned counsel, on behalf of themselves and all others

similarly situated, submit this Complaint against the Defendants named herein. Upon

information and belief, Plaintiffs allege as follows:

## NATURE OF ACTION

    1.    This is an action brought on behalf of Matthew R. Chiste, Donald

Schroud, and Marc Gutman (collectively, the "Representative Plaintiffs" and sometimes referred

to as "consumers"), individually, and on behalf of all other individuals situated similarly to the

Representative Plaintiffs (collectively, the "Plaintiffs"), against Defendants, online travel

companies ("Defendants" or "OTCs"), to recover damages for and obtain injunctive relief to

enjoin, *inter alia*, Defendants' deceptive and misleading business practices, including overbilling

consumers for hotel occupancy taxes and sales taxes imposed by the City and State of New

York, breach of fiduciary duty and breach of contract.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

MATTHEW R. CHISTE, DONALD SCHROUD, and
MARC GUTMAN,

                                           Plaintiffs,

- against -

PRICELINE.COM, INC., LOWESTFARE.COM, INC., and
TRAVELWEB, LLC,

                                          Defendants.

-----------------------------------------------------------------------X

Case No. _____

**CLASS ACTION
COMPLAINT**

Plaintiffs, by their undersigned counsel, on behalf of themselves and all others similarly situated, submit this Complaint against the Defendants named herein. Upon information and belief, Plaintiffs allege as follows:

## NATURE OF ACTION

1.      This is an action brought on behalf of Matthew R. Chiste, Donald Schroud, and Marc Gutman (collectively, the "Representative Plaintiffs" and sometimes referred to as "consumers"), individually, and on behalf of all other individuals situated similarly to the Representative Plaintiffs (collectively, the "Plaintiffs"), against Defendants, online travel companies ("Defendants" or "OTCs"), to recover damages for and obtain injunctive relief to enjoin, *inter alia*, Defendants' deceptive and misleading business practices, including overbilling consumers for hotel occupancy taxes and sales taxes imposed by the City and State of New York, breach of fiduciary duty and breach of contract.

2.     Defendants sell hotel rooms to consumers on their internet websites. As part of this business activity, they enter into contracts with hotels located in New York City and the State of New York and most other cities throughout the country, to obtain an inventory of rooms at a negotiated wholesale rate (the "Wholesale Price" or "Wholesale Rate"). Defendants mark-up the Wholesale Rate (the "Mark-up") to establish the retail room rate that the consumers will pay (the "Retail Room Rate" or "Retail Price") or, if purchased using Priceline.com's Name Your Own Price ("NYOP") feature, Defendants apply the Mark-up to the Wholesale Rate to establish a minimum bid price the OTC will accept for the room rate, and then sell the rooms to the consumers.

3.     In addition to the Retail Room Rate, Defendants charge consumers an additional amount of money which is described on their internet invoices as "Taxes & Service Fees." The charges for taxes and the service fees are combined – or bundled – in one amount so that the consumer is never informed of what portion of the charges is in fact "taxes" and what portion is "service fees."

4.     The State of New York and the City of New York impose taxes on the gross receipts derived from the rental of hotel rooms. However, in the sale of rooms by Defendants over the internet, both governments have exempted consumers from paying the tax on the gross price of the hotel room, and instead require the consumer only to pay the tax on the Wholesale Rate that the Defendants pay for the hotel room. Likewise, Defendants are required only to collect taxes from the consumers based on the Wholesale Price that Defendants pay to the hotels for the room.

5.   Plaintiffs' causes of action are not based on whether Defendants are transferring the proper amount of taxes to the local hotels for remission to the State and City or whether the governments are receiving the taxes due to them.[1]  Rather, with respect to the taxes, Plaintiffs charge Defendants with wrongfully imposing "taxes" on the Plaintiffs on the entire amount of the marked-up Retail Room Rate or NYOP price consumers paid for the hotel room, and then retaining as additional profit the "taxes" charged and collected by them on the difference between the Wholesale Rate and the Retail Room Rate or NYOP price (the "Tax Delta").

6.   The Mark-up and the Tax Delta constitute improper charges to the consumer that are deceptively hidden within the invoice.  The Mark-up is an undisclosed fee and the Tax Delta is an improper overcharge.  Collectively and individually, the Mark-up and the Tax Delta are unearned profits that Defendants should not be permitted to retain (the "Profits").

7.   Further, Defendants engage in additional wrongful, deceptive and misleading misrepresentations, statements, acts and business practices by, among others described in this Complaint:  (i) deceiving consumers regarding rates, hotel occupancy taxes and unnecessary fees by lumping together ("bundling") hotel rates and fees, as well as taxes and fees, without revealing the nature, type, details and specifics of each or the specific amount of each; and (ii) misrepresenting and misleading consumers into believing that Defendants are traditional

---

[1] More than fifty state and local taxing authorities around the country have commenced actions against these same defendants (and other OTCs) to recover under-collected and unremitted accommodations taxes.  *See, e.g., City of San Antonio v. Hotel.com, et al.*, Civil No. SA-06-CA-381-OG (United States District Court, Western District of Texas); *City of Charleston, South Carolina Hotels.com, LP, et al.*, C.A. No. 2:06-cv-1646-PMD (United States District Court, District of South Carolina).  This action is not brought on behalf of the City or State of New York, but on behalf of the Representative Plaintiffs and the class of consumers they represent.

travel agents acting on the consumers' behalf with the consumers' best interests in mind who receive only a fee from the consumer for their services, when in fact Defendants are engaged in a wholesale/retail business of purchasing a block of rooms at a discounted rate from hotels, marking them up and selling them at a retail rate (which includes profit) to the consumer on the internet.

8. Defendants' actions, including (but not limited to) the articulation of the fees, taxes and other amounts due on the online invoice and the agreement with the consumer when he/she purchases a room, constitute Defendants' representing themselves to be agents of the consumer. These action (and others such as Defendants' internet and television advertisements, their press releases to the media and public, the statements of their agent trade organization, the Interactive Travel Services Association, their lobbyists and other spokesperson's statements while lobbying state and federal legislative bodies, and their pleading and briefs filed in numerous courts throughout the country in hotel accommodations litigation brought against Defendants by government entities) mislead and induce consumers into believing Defendants are agents acting on their behalf.

9. In addition, Defendants have breached their contracts and fiduciary duties with the consumer by representing to the consumer that the Defendants are offering the hotel room for the lowest cost on their websites, when in fact the Defendants know that the consumer could rent the room directly from the hotel at a lower cost.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because (i) the Plaintiffs (including the Representative Plaintiffs and/or

members of the Plaintiff class) and some of the Defendants are citizens of different states; (ii) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) one or more primary Defendants are not citizens of the State of New York.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to all of the Plaintiffs' claims occurred within this judicial district.

## PARTIES

12.    The Representative Plaintiffs are as follows:

12.1.    Representative Plaintiff MATTHEW R. CHISTE is an individual residing in Arlington, Virginia who purchased occupancy in a hotel in New York City in November 2006 through Defendant Priceline.com, Inc.

12.2.    Representative Plaintiff DONALD SCHROUD is an individual residing in Chicago, Illinois who purchased occupancy in a hotel in New York City in October 2007 through Defendant Priceline.com, Inc.

12.3.    Representative Plaintiff MARC GUTMAN is an individual residing in Superior, Colorado, who purchased occupancy in a hotel in New York City in September 2007 through Defendant Priceline.com, Inc.

13.    Defendant, PRICELINE.COM, INC. ("Priceline"), is a Delaware corporation with its principal place of business in Norwalk, Connecticut. Defendant Priceline has at all times relevant to this litigation conducted business in the City and State of New York.

14.     Defendant, LOWESTFARE.COM, INC. ("Lowestfare"), is a Delaware corporation with its principal place of business in Las Vegas, Nevada. Defendant Lowest Fare has at all times relevant to this litigation conducted business in the City and State of New York.

15.     Defendant, TRAVELWEB, LLC ("Travelweb"), is a Delaware limited liability corporation with its principal place of business in Dallas, Texas. Defendant Travelweb has at all times relevant to this litigation conducted business in the City and State of New York.

16.     Defendants Lowestfare, and Travelweb are affiliated business entities, related through the common corporate parent Priceline (collectively referred to as the "Priceline Group").

## JOINDER

17.     Pursuant to Rule 20 of the Federal Rules of Civil Procedure ("FRCP"), the Plaintiffs' right to relief (individually and as a Class) arises out of the same series of transactions or occurrences, each giving rise to questions of law and fact common to all Plaintiffs and all members of the Plaintiff class.

18.     Pursuant to FRCP 20, all Defendants have been properly joined. Plaintiffs have asserted against Defendants a right to relief arising from the same series of transactions or occurrences, each giving rise to questions of law and fact common to all Defendants.

## COMMON ALLEGATIONS

**A.     The Defendants' Business Model.**

19.     Defendants conduct their web-based hotel booking and room sale business, and have conducted such business for a number of years, using three basic and different business models:  the "agency model" (also called the "traditional" or "postpaid"

model) when only booking rooms for consumers, the "merchant model" (or a hybrid or other characterization of the merchant model) when selling rooms to consumers, and a pseudo-auction model also used to sell rooms to consumers.

20.    Under the Defendants' agency or traditional model, the hotel determines the retail room rate to be paid by the consumer, the hotel collects the full payment for the room from the consumer, and the hotel remains the merchant of record. Under this model, the Defendants simply act as agents, merely make or book the reservation for the consumer, do not collect the room rate or taxes, and receive a commission from the hotel for their reservation service. The consumer does not pay any money to the Defendants. At the conclusion of the consumer's stay at the hotel, the consumer pays the hotel, which then remits a commission to the Defendants.

21.    Under the merchant model, Defendants enter into a contract with the hotel to obtain an inventory of rooms at negotiated Wholesale Rates. Pursuant to this contract, the Defendants have control of the rooms. For example, Defendants determine the Mark-up of the Wholesale Rates (thereby setting the marked-up Retail Room Rate that the consumer will pay), determine the cancellation policies applicable to the consumer, and sell the rooms to the consumer. The consumer pays the Retail Room Rate, as well as all taxes and Defendants' fees to Defendants by credit card before ever arriving at the hotel and before occupying the hotel room sold by Defendants. Once the consumers have paid for a room on the Defendants' website, the sale of the room is complete. Even though the hotel has received no money from the consumers, at this point the consumers have the right to check in and out of the hotel in the State of New York without paying any additional money unless, during their stay, they use one of the services

provided by the hotel, such as telephone charges, mini bar, On Demand video, etc. Charges for these services are billed separately by the hotel. If the consumer wants to extend his or her stay, the hotel does not have the authority to do so; instead, the consumer must contact Defendants before he or she can occupy the room for an additional period of time. In this model, the merchant model, Defendants are the merchant of record.

22. Defendant Priceline also offers a third model unique from all other OTCs: a pseudo-auction model under the moniker of "Name Your Own Price" (the "NYOP model"). The consumer can select the NYOP model by choosing to "bid now" on a hotel room. The bidding process requires the consumer to select the dates for travel, the general geographic location where he or she would like to stay (i.e., Chelsea Area, Midtown East, Upper West Side, etc.), and the level of the hotel (i.e., four-star). Once the consumer has navigated these choices, the "bid price" the consumer offers to pay is entered.[2] If the bid is accepted, the consumer is then advised as to the amount of Taxes and Service Fees that will be due. If the bid is rejected, depending on the level of hotel, the consumer may or may not have an opportunity to re-bid. Upon information and belief, the lowest bid that Priceline is permitted to accept must be more than the cost of the room were it purchased directly from the hotel and still includes the Mark-up to ensure Priceline profits on the transaction.

23. With respect to the Priceline plaintiffs, regardless of whether the transaction occurs under the merchant or the NYOP model, the consumer is deceived to believe

---

[2]  Notably, next to the place to enter the bid amount, Priceline offers a link to the merchant model prices to "assist" the consumer in ascertaining an appropriate bid amount. If the initial bid is too low, Priceline suggests that the consumer reconsider the bid and that "You should, as a general guideline, expect to pay an average price of $486 per night for a 4-star hotel in the New York City area if you called the hotel directly."

that Priceline (and the other Defendants) are acting as travel agents with the client's best interest in mind. The method of reaching an agreed upon price does not alter the culpability of Defendants for the deception, as Defendants set the minimum acceptable price under both models. In fact, the NYOP model is more deceptive in that it offers the consumer the belief that the price can be negotiated even lower, when in fact the price of the room will not drop below the rate offered directly from the hotel.

24. A redacted sample invoice that the consumer receives when purchasing a room using the NYOP model is attached as Exhibit A. This invoice incorporates the same information as if it the hotel room were purchased in the merchant model. As the invoice shows, what the consumer sees on Defendants' websites and/or receives from the Defendants at the time of the sale is a statement as to the room rate (here "Your Offer Price"), the subtotal, the bundled Taxes and Service Fees and the total room cost of the stay. The consumer (i) is not informed by the Defendants in the invoice that a portion of the minimum bid price which would be acceptable under the NYOP model or the Retail Room Rate under the merchant model represents an unidentified mark-up or how much; (ii) is not informed by the Defendants that the portion of the Retail Room Rate in excess of the Wholesale Rate under the merchant model actually represents Defendants' Mark-up of the Wholesale Rate or profit on the sale of the room; (iii) is not informed by Defendants how much of the Retail Room Rate is Defendants' Mark-up of the Wholesale Rate; (iv) is not informed by Defendants whether the consumer is paying tax on just the Wholesale Rate, a portion of the Retail Room Rate, or the entire Retail Room Rate; and (v) is not informed by Defendants of the amount of Defendants' service fee separate and apart from the taxes charged to the consumer. The Defendants' failure to inform the consumer of each and/or

all of the items listed in (i) through (v) constitute wrongful, deceptive and misleading business acts and practices by Defendants, omissions and concealments by Defendants, breaches of Defendants' contract with consumers, and breaches of Defendants' fiduciary duty to consumers.

25.     The vast majority of Defendants' web-based transactions involving the booking and sale of hotel rooms use the merchant model, or a hybrid or other characterization of the merchant model, or (in the case of the Priceline Defendant) the NYOP model, which are the transactions that form the basis of Plaintiffs' Complaint.

26.     The manner in which Defendants conduct business (including the calculation, assessment and collection of taxes and fees) does not change from city to city, has not changed in any material way since they began using these models, and is substantially the same across all Defendants (except as otherwise indicated).

**B.     The Defendants' Contract with Consumers**

27.     The consumer purchases a room from the Defendants through a web-based transaction using pricing information and an online invoice, which is accompanied by "Terms and Conditions" in an "Agreement,"[3] which Defendants enter into with consumers. The Agreement purports to state the rights and responsibilities of both the Defendants and the consumer and was crafted to be deliberately confusing and to deceive the consumer into believing that he or she is entering into an agreement with the Defendants who are acting as the

---

[3] All of the Defendants use an Agreement that is the same as, or substantially the same as, the one used by Defendant, Priceline. As a matter of economy and convenience, any specific references herein to provisions within the Agreement are taken from Priceline's Agreement, but are believed to be utilized by all of the Defendants.

consumer's agent, instead of a transaction in which the Defendants are marking up and selling the room to the consumer. Some of the relevant portions of the Agreement are:

> In connection with facilitating your hotel transaction, the charge to your debit or credit card will include a charge for Taxes and for Service Fees. This charge includes an estimated amount to recover the amount we pay to the hotel in connection with your reservation for taxed owed by the hotel including, without limitation, sales and use tax, occupancy tax, room tax, excise tax, value added tax, and/or other similar taxes. The amount paid to the hotel in connection with your reservation for taxes may vary from the amount we estimate and include in the charge to you. This charge also includes an amount to cover service costs we incur in connection with handling your reservation. The charge for Taxes and Service Fees varies based on a number of factors including, without limitation, the amount we pay the hotel and the location of the hotel where you will be staying, and may include profit that we retain.

> We are not the vendor collecting and remitting taxes to the applicable taxing authorities. Our hotel supplies, as vendors, include all applicable taxes in the amount billed to us and we pay over such amounts directly to the vendors. We are not a co-vendor associated with the vendor with whom we book or reserve our customer's travel arrangements. Taxability and the appropriate tax rate and the type of applicable taxes vary greatly by location.

(Emphasis added).

### C.   The Hotel Occupancy And Sales Taxes.

28.     Pursuant to § 11-2502 of the New York City Administrative Code and § 12-02 of the Rules of the City of New York, a tax is imposed on a daily basis for the occupancy of any hotel room in the City of New York (the "Hotel Occupancy Tax"). The amount of the tax is determined by the use of a formula prescribed by statute.

29.     The formula used for the imposition of the Hotel Occupancy Tax is as follows: $0.50 per day for any room rented at a rate of $10.00 or more, but less than $20.00 per

day; $1.00 per day for any room rented at a rate of $20.00 or more, but less than $30.00 per day; $1.50 per day for any room rented at a rate of $30.00 or more, but less than $40.00 per day; or $2.00 per day for any room rented at a rate of $40.00 or more per day. In addition, the statutes impose an additional tax of 5% of the rent per day for each room rented. During the period of 2003 through 2006, the City of New York collected over $975 million from the Hotel Occupancy Tax.

30.     Additionally, the Hotel Occupancy Tax requires that "the tax to be collected shall be stated and charged separately from the rent and shown separately on any record thereof, at the time when the occupancy is arranged or contracted for and charged for and upon every evidence of occupancy or any bill or statement or charge made for said occupancy issued or delivered by the operator." N.Y. City Admin. Code § 11-2502(f); R.C.N.Y. § 12-08(a).

31.     In addition to the Hotel Occupancy Tax, Defendants charge and collect a sales tax imposed by the State of New York upon the rent for every occupancy of a room or rooms in a hotel within the State of New York at a rate of 5.375 percent (the "State Sales Tax"). The State Sales Tax is imposed pursuant to New York State Tax Law § 1105, *et. seq.*

32.     Like the Hotel Occupancy tax, the State Sales Tax must be itemized on the invoice pursuant to New York State Tax Law § 1132(a)(1).

33.     A sales tax is also imposed by the City of New York, pursuant to § 11-2002 of the New York City Administrative Code (the "City Sales Tax"). The City Sales Tax is a charge of three (3) percent upon "the rent for every occupancy of a room or rooms in a hotel in the city of New York" and, pursuant to § 11-2502(f) of the New York City Administrative Code, must be separately itemized.

34.     Under the applicable tax enabling statutes (i.e., the New York City Administrative Code, the Rules of the City of New York, and the New York State Tax Law), the Hotel Occupancy Tax and the City and State Sales Taxes (collectively, the "Taxes"), should only be applied to the initial transaction between the OTC and the hotel and should be calculated based on the Wholesale Price negotiated between the two.  To the extent the Taxes are passed on to the consumer, the consumer should only be obligated to pay the Taxes actually imposed by the various taxing authorities on the Wholesale Rate and not on the higher Retail Room Rate.

E.     **Defendants' Deceptions.**

35.     In the course of their business transactions with the consumers, Defendants engage in numerous deceptive and misleading misrepresentations, omissions and concealments, statements, acts and business practices, including but not limited to the following:

35.1.     Deliberately designing and crafting the Agreement that consumers enter into with Defendants online to confuse, mislead and deceive consumers when sales of rooms are made online by Defendants using the merchant model, any hybrid or other characterization of the merchant model, or the NYOP model;

35.2.     Misrepresenting and misleading consumers into believing that Defendants are traditional travel agents who are acting on the consumers' behalf with the consumers' best interests in mind, and who receive only a fee from the consumer for those services.  Defendants' actions, omissions and concealments which mislead the consumers to believe that Defendants are agents acting on their behalf and in their best interest include, but are not limited to, the online invoice, statements made on Defendants' websites, and the agreement with the consumer when he/she purchases a room, the Defendants' advertising on the internet

and on television, their press releases to the media and public, the statements of their agent trade organization, the Interactive Travel Services Association, their lobbyists and other spokespersons' statements while lobbying state and federal legislative bodies, and their pleadings and briefs filed in numerous courts throughout the country in hotel accommodations litigation brought against Defendants by government entities. In fact, Defendants are engaged in a wholesale/retail business of purchasing a block of rooms at a discounted rate from hotels, marking them up and selling them at an inflated rate to the consumer over the internet (that rate being fixed in the "merchant model" or a pseudo-auction in the NYOP model);

35.3.   Misrepresenting and misleading consumers into believing that Defendants are the consumers' agent by hiding the Mark-up of the Wholesale Rate without disclosing its existence or its amount;

35.4.   Failing to state and disclose in the pricing information on Defendants' websites and in the customers' invoice and receipt that the total Retail Room Rate contains Defendants' alleged Mark-up;

35.5.   Imposing and charging consumers a so-called "service fee," which Defendants bundle together with the charge for taxes without separately disclosing the specific amount of the "service fee" charged;

35.6.   Adding on and charging consumers a "service fee," which is calculated by applying a fixed percentage to the Retail Rate or NYOP price, that includes the Mark-up, thereby charging consumers a "fee" calculated on a "fee." Defendants do not disclose the amount of either fee or itemize either fee in the consumers' invoice or pricing information;

35.7.   The Defendants' advertising and statements on their website mislead and deceive the consumer into believing that he or she will pay the lowest cost for the hotel room when purchasing a room from the Defendants' websites. Instead, the Defendants know but fail to disclose to the consumer that he or she could purchase the same room on the same night directly from the hotel at a lower cost, thus the consumer pays more – not less – by using the Defendants' websites;

35.8.   Charging, billing and invoicing consumers online for taxes without separately and specifically stating and itemizing the amount of each tax being charged, and/or by failing to furnish the consumers a receipt showing the separate itemized amounts charged as or representing taxes; and,

35.9.   Failing to disclose to consumers that Defendants retain and/or do not remit the Tax Delta charged on the difference between the Wholesale Rate and Retail Rate or NYOP price of the hotel room.

36.   Defendants have engaged in, and still engage in, misleading and deceptive business practices by misrepresenting to Plaintiffs that Defendants are travel agents (and not vendors, co-vendors or merchants) when they use the merchant model (or a hybrid or other characterization of the merchant model) or the NYOP model to book and sell rooms to consumers. Having represented that they are acting as agents rather than merchants and vendors in their transaction with Plaintiffs and other consumers, Defendants have assumed the fiduciary duties and responsibilities of agents and are estopped from denying the applicability of the fiduciary duties and responsibilities of the agents they purport to be. Defendants have violated these fiduciary obligations and duties by acting and engaging in the deceptive and misleading

business practices and misrepresentations enumerated and described above, and described elsewhere in this Complaint.

**F.   Defendants' Tax Overcharges.**

37.   Defendants overcharge the consumer for the Taxes.

38.   At the time of the sale to the consumer, Defendants charge the consumer Taxes calculated on the Retail Room Rate or the NYOP accepted bid price (which cannot be less than the Wholesale Rate plus the Mark-up). When the consumer checks out of the room, Defendants pay the hotels for the Wholesale Rate of the room plus the applicable Taxes to the hotel based on the lower Wholesale Rate. The Tax Delta, as defined above in paragraph 5, does not constitute Taxes which are required to be collected by the taxing authority and is not remitted to the taxing authority, but is retained by the Defendants as additional profit. There is no statutory basis for Defendants to charge or retain the Tax Delta.

39.   By hiding the amount of the Mark-up within the Retail Room Rate and within the minimum acceptable bid price, Defendants deceive the consumer into believing the entire retail transaction is taxable. This implies to the consumer that the taxable amount is outside of Defendants' control and, because it is a tax, it is being passed on to the hotel which will then remit the Taxes to the taxing authority. Neither, in fact, is true. Defendants artificially increase the amount of tax being charged to the consumer or increase their service fee by the amount of the taxes they are not required to collect.

40.   The tax recovery fee is based on the amount of Taxes that would be charged at the Retail Room Rate or bid price, rather than the amount actually paid on the Wholesale Rate. This includes the Taxes on the Mark-up. Under New York City and State of

New York law, there is no statutory basis to impose a tax on the Mark-up, and therefore, this deception results in the consumer blindly paying unnecessary taxes which are not required to be remitted to the taxing authority. Instead, it is retained by the Defendants.

41.     The State and City laws specifically require that the Defendants inform the consumer of the amount of each tax being paid. By bundling the Taxes with the service fees in the "Taxes and Service Fees" line, Defendants effectively mask the improper charges from scrutiny by the purchasing consumer.

### G.     An Example of Defendants' Deceptive Practice in Collection of Taxes.

42.     Documentation solely within Defendants' possession will confirm these practices. However, to illustrate the scope of the deception, the Plaintiffs provide this hypothetical example:

43.     Priceline obtains a room from a hotel at a negotiated Wholesale Rate of, for instance, $70.00 per night. The City of New York, under the Hotel Occupancy Tax, collects $2.00 per day, because the room rate is greater than $40.00 per day, plus an additional $3.50 per day, which is 5% of $70.00. The total Hotel Occupancy Tax collected by the City of New York in this example is $5.50 per day. Priceline will also pay $3.76 per day to the hotel for the States Sales Tax (5.375%) and $2.10 per day for the City Sales Tax (3.0%). The total Taxes that Priceline will pay to the hotel in this example is $11.36 per day.

44.     Priceline, allegedly acting as a travel agent but actually acting as a merchant (whether in the merchant or NYOP model), in turn sells that same hotel room to an

occupant over the Internet for $100.00 per day.[4]  At the Retail Rate of $100.00 per night, the Hotel Occupancy Tax would be assessed by Priceline at $7.00 per day ($2.00 per day because the Retail Rate is greater than $40.00 per day, plus an additional $5.00 per day, which is 5% of $100.00), the State Sales Tax would be billed at $5.38 per day and the City Sales Tax at $3.00 per day.  The total Taxes charged to the consumer would be $15.38 per day.

45.    The Tax Delta in this example between what Priceline paid the hotel and what it collected from the consumer in Taxes, and which Priceline improperly retains, is $4.02. This constitutes an improper overcharge to the consumer that is not authorized or warranted by the laws of the State of New York or the New York City.

46.    Additionally, by bundling the $30.00 Mark-up with the $70.00 Wholesale Rate into the $100.00 Retail Room Rate, the OTCs fail to disclose to the consumers that the Hotel Occupancy Tax is owed to the governmental entities by consumers only on the hotel's $70.00 Wholesale Rate of the room negotiated by the hotels with Defendants.  Thereby, Defendants are misleading the consumers to believe that the entire $100.00 Retail Price is being taxed by the taxing authorities.  The Defendants are charging the $15.38 applicable taxes on the Retail Room Rate of the room and pocketing the $4.02 difference between the $11.36 tax on the $70.00 Wholesale Rate of the room and the $100.00 Retail Room Rate.  In the alternative, Defendants are increasing their service fee and the consumer believes that he or she is paying the $15.38 tax on the $100.00 Retail Rate.  In short, the OTC is overcharging for $4.02 taxes and is keeping this amount as additional profit.

---

[4] In this example, the Mark-up would be $30.00 (the difference between the Retail Room Rate [$100.00] and the Wholesale Rate [$70.00]).

## PLAINTIFFS' CLASS ALLEGATIONS

47.     The Plaintiffs request that the Court certify this case as a class action. The Plaintiffs seek to certify a single class consisting of all individuals who have purchased hotel rooms in New York City from any of the members of the Priceline Group.

48.     The Plaintiffs bring this action pursuant to FRCP 23 and meet the prerequisites to a class action articulated in FRCP 23(a):

48.1.     The class is so numerous that joinder of all members is impracticable. From 2003 through 2006, the City of New York saw 164.1 million tourists. The tourism industry has continued to show steady growth from 2001 to present. Furthermore, this figure does not include those who stayed in hotels in the City of New York for purposes other than tourism. In total, as of February 29, 2008, there were more than 73,333 hotel rooms available in the City of New York;[5]

48.2.     There are questions of law and fact common to the Plaintiff Class, including, but not limited to:

(i)     Whether each consumer who visited the City of New York and stayed in a hotel purchased through one of the Defendants was subject to the same deceptive billing scheme and other deceptive acts as described in paragraph 35 (including 35.1 through 35.9);

(ii)     Whether Defendants have a fiduciary duty to limit the amount of Taxes collected from the consumer to the amount required by statute, and whether the consumer was defrauded by Defendants' overcharging for Taxes;

---

[5] This figure was taken from nycvisit.com, a website devoted to encouraging tourism in the City of New York. Notably, nycvisit.com includes a link to Orbitz.com, which is a website that offers similar services as Defendants in the within action.

(iii)     Whether Defendants have a legal duty to specifically state, as part of their billing practices, the amount of the total billed that is allocated to the payment of each individual Tax;

(iv)     Whether the consumer was misled to believe the price offered by Defendants was the lowest rate for the hotel room purchased when, in the vast majority of cases, the consumers are charged more by Defendants than if the room was booked directly from the hotel;

(v)     Whether each deceptive act as described in paragraph 35 (including paragraph 35.1 through 35.9) is a violation of New York General Business Law § 349 (the Consumer Protection from Deceptive Acts and Practices statute);

(vi)     Whether the Plaintiff Class is entitled to injunctive and declaratory relief enjoining Defendants from continuing these deceptive practices and acts;

(vii)     Whether Defendants have converted and continue to convert the consumers' money;

(viii)     Whether, and to what extent the Defendants are acting as, or in fact are, merchants rather than travel agents (as they purport to be) and what duty Defendants owe to the consumer regarding the disclosure of the nature of their relationship with the consumer and the amount of all fees and profits earned by the Defendants from the consumer transaction;

(ix)     Whether Defendants breached the agreement entered into with each consumer by collecting Taxes in excess of the amounts required by the taxing authority; and

(x)     Whether, and in what amount, the members of the Plaintiff Class are entitled to recover court costs, attorneys' fees, penalties and interest, and the cost of an audit.

48.3.     The claim of the Representative Plaintiffs is typical of the claims of the Class as a whole. Messrs. Chiste, Schroud, and Gutman each are residents of states other than New York who visited New York in November 2006, October 2007, and September 2007, respectively. Each booked their hotel room through Defendant Priceline using either the merchant model or the NYOP model. They, like the other members of the Plaintiff Class, have

been subjected to Defendants' improper business practice. The Representative Plaintiffs and the members of the Plaintiff class were and are similarly or identically harmed by the same unlawful, unfair, systematic and pervasive pattern of misconduct; and

48.4.    The Representative Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class. There are no material conflicts between the claims of the Representative Plaintiffs and the members of the Plaintiff Class that would make class certification inappropriate.

49.    The counsel selected to represent the Plaintiff Class will fairly and adequately protect the interests of the Plaintiff Class. Class counsel are experienced trial attorneys who have experience in complex litigation and are competent counsel for this class action litigation. Class counsel are also representing a separate and overlapping class of consumers in a related class action under the caption *Chiste, et. al. v. Hotels.com, L.P., et. al.,* Case No. 08-CV-10676 in the United States District Court for the Southern District of New York. Counsel for the Plaintiff Class will vigorously assert the claims of all Class members.

50.    The Class is maintainable pursuant to FRCP 23(b)(1). The prosecution of separate actions by each individual member of the class would create a risk of inconsistent or varying adjudications, which would result in incompatible standards of conduct for the party opposing the class. Likewise, as all of the members of the Plaintiff Class share a common theory of liability, the adjudication of any one litigation would as a practical matter be dispositive of the interests of all other such claims and would substantially impair or impede the individual class member's ability to protect his or her interests.

51.     The Class is also maintainable pursuant to FRCP 23(b)(2). Defendants, by engaging in the enumerated deceptive business practices, have acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

52.     Alternatively, the Class is maintainable pursuant to FRCP 23(b)(3). This action is properly maintained as a class action in that common questions of law and fact exist as to the members of the Plaintiff Class (as have been identified in paragraphs 48 and 67) and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy. A class action is superior in this instance as it permits the thousands of visitors to the City of New York who have purchased hotel space through Defendants to protect their rights and interests, where to proceed individually would make it infeasible to do so. As there are no other pending actions asserting these claims against the Defendants, this is the best (and only) means to preserve and enforce the rights of the members of the Plaintiff Class.

53.     The Representative Plaintiffs contemplate the eventual issuance to the proposed Class members of notice setting forth the subject and nature of the instant action.

## FIRST CAUSE OF ACTION
(Deceptive Business Practices)

54.     The Plaintiffs reallege and incorporate each of the above allegations as set forth in paragraphs 1 – 53 by reference as if set forth herein at length.

55.     General Business Law § 349 makes it illegal to engage in deceptive business practices.

56.     Defendants have engaged in numerous deceptive and materially misleading acts within the meaning of General Business Law § 349, including but not limited to the specific deceptions listed in paragraphs 5- 8, 24, 35, and 37-41 which are incorporated herein, and as follows:

56.1.     Charging consumers the Hotel Occupancy Tax at the Retail Room Rate, remitting the Hotel Occupancy Tax at the Wholesale Rate, and pocketing the difference;

56.2.     Charging consumers the State Sales Tax at the Retail Room Rate, remitting the State Sales Tax at the Wholesale Rate, and pocketing the difference;

56.3.     Charging consumers the City Sales Tax at the Retail Room Rate, remitting the City Sales Tax at the Wholesale Rate, and pocketing the difference;

56.4.     Billing the Hotel Occupancy Tax as part of a general "Taxes and Service Fees" without specifically enumerating the amount of tax being charged;

56.5.     Billing the State Sales Tax as part of a general "Taxes and Service Fees" without specifically enumerating the amount of tax being charged;

56.6.     Billing the City Sales Tax as part of a general "Taxes and Service Fees" without specifically enumerating the amount of tax being charged;

56.7.     Bundling the Wholesale Rate with the Mark-up;

56.8.     Imposing a service fee on that portion of the Retail Room Rate constituting the mark-up without disclosing said fee; and

56.9.     Deceiving the consumer to believe that Defendants provide the lowest possible rate on the hotel room, when in fact, the lowest rate available was directly from the hotel.

57.     Defendants' deceptive and materially misleading practices are willful and knowing.

58.     The Representative Plaintiffs and the members of the Plaintiff Class have been injured by Defendants deceptive and materially misleading business practice for each day a room was rented in the City of New York from the Defendants.

59.     The Representative Plaintiffs and the members of the Plaintiff Class are entitled to recover actual damages or fifty dollars ($50.00), whichever is greater, from Defendants for each and every deceptive and materially misleading act.

60.     Insofar as it is determined that Defendants acted willfully and knowingly, the Representative Plaintiffs and the members of the Plaintiff Class are entitled to recover treble the actual damages incurred up to one thousand dollars ($1,000.00) from Defendants for each and every willful and knowing deceptive and materially misleading act.

61.     To the extent any of the members of the Plaintiff Class are elderly, as defined by General Business Law § 349, she or he is entitled to recover additional civil penalties in an amount to be determined at the time of trial.

## SECOND CAUSE OF ACTION
(Declaratory and Injunctive Relief Requested Pursuant to New
York General Business Law § 349)

62.     The Plaintiffs reallege and incorporate each of the above allegations in paragraphs 1 – 61 by reference as if set forth herein at length.

63.     Pursuant to General Business Law § 349, Plaintiffs are entitled to an order enjoining Defendants from continuing the practice of billing the consumer for the Taxes based

upon the Retail Room Rate they charge and not the Wholesale Rate they pay to purchase the rooms.

64.     Pursuant to General Business Law § 349, Plaintiffs are entitled to an order enjoining Defendants from continuing the practice of bundling the Mark-up with the Wholesale Rate without disclosing the amount of the Mark-up and compelling Defendants to itemize the Mark-up.

65.     Pursuant to General Business Law § 349, Plaintiffs are entitled to an order enjoining Defendants from continuing the practice of listing the Taxes on the invoice to the consumer as part of the generic "Taxes and Service Fees" and compelling Defendants to itemize the taxes and fees that are billed.

### THIRD CAUSE OF ACTION
(Declaratory and Injunctive Relief Requested Pursuant to 28
U.S.C. § 2201, *et. seq.*)

66.     The Plaintiffs reallege and incorporate each of the above allegations as set forth in paragraphs 1 – 65 by reference as if set forth herein at length.

67.     Pursuant to 28 U.S.C. § 2201, et. seq., the Representative Plaintiffs and the Plaintiff Class seek a declaration of rights and/or duties with respect to all Defendants.  An actual case or controversy exists between the Representative Plaintiffs and the Plaintiff Class and the Defendants as to the deceptive practices set forth in paragraphs 5-8, 24, 35, and 37-41 which are incorporated herein and include but are not limited to the following:

67.1.    Whether each consumer who visited the City of New York and stayed in a hotel purchased through one of the Defendants was subject to the same deceptive billing scheme;

67.2. Whether Defendants have a legal duty to limit the amount of Taxes collected from the consumer and whether the consumer was defrauded by Defendants' overcharging for Taxes;

67.3. Whether Defendants have a legal duty to specifically state, as part of their billing practices, the amount of the total billed that is allocated to the payment of each individual Tax;

67.4. Whether Defendants have a legal duty to specifically tell the consumer that the retail room rate includes a Mark-up that is not included in the bundled "Taxes and Service Fees;"

67.5. Whether the consumer was mislead to believe the price offered by Defendants was the lowest rate for the hotel room purchased when, in the vast majority of cases, the consumers are charged more by Defendants than if the room was booked directly from the hotel;

67.6. Whether the Plaintiff Class is entitled to injunctive and declaratory relief enjoining Defendants from continuing these deceptive practices and acts;

67.7. ~~Whether Defendants have and~~ continue to convert the consumers' money;

67.8. Whether, and to what extent the Defendants are purporting to act as travel agents and what duty Defendants owe to the consumer regarding the disclosure of the nature of and the amount of all fees and profits earned by the Defendants from the consumer transaction and all other aspects of the transaction;

67.9.  Whether Defendants breached the agreement entered into with each consumer by collecting Taxes in excess of the amounts required by the taxing authority; and

67.10.  Whether, and in what amount, the members of the Plaintiff Class members are entitled to recover court costs, attorneys' fees, penalties and interest, and the cost of an audit.

## FOURTH CAUSE OF ACTION
(Conversion)

68.  The Plaintiffs reallege and incorporate each of the above allegations set forth in paragraphs 1 – 67 by reference as if set forth herein at length.

69.  At all times mentioned herein, the monies wrongfully taken from the Representative Plaintiffs and the Plaintiff Class were in the possession of one or more Defendants who wrongfully exercised dominion and control over said monies, thereby depriving each Plaintiff of the use and benefit thereof.

70.  At all times mentioned herein, the Representative Plaintiffs and the Plaintiff Class have been entitled to and have had the right to the immediate possession of personal property, namely the Tax Delta (the difference between the amount of the Taxes paid by Defendants to the hotel and the amount Defendants collected from the Representative Plaintiffs and the Plaintiff Class), the Mark-up, and the fee calculated on a fee (as referenced in paragraph 35.6) for each night a room was rented in the City of New York from Defendants and the Representative Plaintiffs and Plaintiff Class demand that their money be returned.

71.  As a direct and proximate result of Defendants' conduct, all of the Plaintiffs have suffered, and will continue to suffer, injury including damages in an amount to be

determined according to proof at the time of trial, together with interest from the time of the conversion.

72.    The Representative Plaintiffs and the Plaintiff Class are also entitled to special damages, including compensation for time lost and money spent in pursuit of the converted funds, in an amount to be determined at the time of trial.

73.    The Representative Plaintiffs and the Plaintiff Class are also entitled to punitive damages in an amount to be determined at the time of trial because the manner in which Defendants converted the Plaintiffs' money was gross, wanton and deliberate conduct and demonstrated a high degree of moral culpability.

## FIFTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

74.    The Plaintiffs reallege and incorporate each of the above allegations set forth in paragraphs 1 – 73 by reference as if set forth herein at length.

75.    Defendants are engaged in the retail sale of hotel rooms but portray themselves as travel agents, deceiving the consumer into believing that the OTC is acting as their travel agent and acting in their best interest as fiduciaries. They purport to be travel agents who only provide travel information and facilitate the reservation of hotel accommodations for the consumer for a service fee.[6]

76.    Travel agents have a fiduciary obligation to act in accordance with the highest and truest principles of morality. This means that travel agents are required to make a

---

[6] Defendants also offer services to arrange for transportation, including air fare and rental cars. These additional services are not subject to this dispute.

- 28 -

truthful and complete disclosure to those to whom a fiduciary duty is owed and the fiduciary is forbidden to obtain an improper advantage at the other's expense.

77.    Defendants breached their fiduciary obligation and placed their own pecuniary interest above that of the consumer by not disclosing that they are selling the room to the consumer at a marked-up Retail Room Rate and by not explicitly identifying the mark-up, the amount of the service fee being charged to the consumer for Defendants' services, the portion of the service fee being charged on the mark-up, the amount of the tax being charged and remitted to the hotels, and by not disclosing to their consumers the profit Defendants stood to gain from these transactions.

78.    Defendants also breached their fiduciary obligation by convincing the consumer it was receiving the lowest room rate by purchasing through their services when the cost of renting the room would have been less if purchased directly from the hotel.

79.    Having held themselves out as traditional travel agents, Defendants are estopped from denying the applicability of the fiduciary duties and responsibilities of the agents they purport to be when selling hotel rooms to the consumer. Defendants have violated these fiduciary obligations and duties by acting and engaging in the deceptive and misleading business practices and misrepresentations.

80.    Defendants' breach of their fiduciary obligation was a substantial factor in causing the Plaintiff Class' injury. Had Plaintiffs been made aware that purchasing a hotel room through Defendants was actually more expensive than if done directly from the hotel, Plaintiffs would not have used Defendants' services.

81. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiffs and Plaintiff Class have suffered, and will continue to suffer, injury including damages in an amount to be determined according to proof at the time of trial.

82. Defendants also should be required to disgorge any profits earned as a result of their breach of fiduciary duty.

83. Defendants' breach of their fiduciary obligations was intentional, deliberate, fraudulent, willful and wanton. As such, the Plaintiff Class is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### (Breach of Contract)

84. The Plaintiffs reallege and incorporate each of the above allegations set forth in paragraphs 1 – 83 by reference as if set forth herein at length.

85. Defendants require every consumer booking a room through their service to agree to certain terms and conditions as part of the purchase. These terms and conditions are a contract (denominated as an "Agreement" by the Defendants). Consistent with this policy and practice, each member of the Plaintiff Class entered into the Defendants' Agreement.

86. Each member of the Plaintiff Class performed his or her obligations under the Agreement. The Agreement requires, among other things, the consumer to agree to permit Defendant to charge the consumer's credit card for the total sales price (constituting the Retail Price, plus tax recovery charges and fees) and each member of the Plaintiff Class complied with that requirement.

87. By engaging in the aforementioned deceptive practices as set forth previously in the Complaint in paragraphs 5-8, 24, 35, and 37-41 including collecting the Taxes

in amounts in excess of that required by the tax enabling statutes, Defendants breached the Agreement.

88. Defendants use of the merchant business model is also a breach of the Agreement, which specifically states that the Defendants are "not co-vendors associated with the vendor with whom we book or reserve our customer's travel arrangements." By using the merchant business model or the NYOP model, Defendants are acting as co-vendors with the hotel.

89. By engaging in the aforementioned deceptive practices as set forth in paragraphs 5-8, 24 and 35 of the Complaint, Defendants also breached the implied covenant of good faith and fair dealing. Defendants have acted in a manner that deprives the Representative Plaintiffs and the Plaintiff Class of the right to receive the benefits under the agreement. Having charged and retained the over-payment of the Taxes, Defendants have acted in bad faith and have withheld the benefit Defendants represent to induce the Plaintiffs and Plaintiff Class to use their services – namely, a better price on the cost of a hotel room.

90. The Plaintiff Class has been damaged by Defendants pervasive breach of the contract entered into with each individual Plaintiff in an amount to be determined at the time of trial.

91. The Plaintiff Class is entitled to an award of punitive damages because Defendants breach is actionable independent of the breach itself, is egregious in nature, directly damaged the Plaintiff Class and is directed to the public generally. The amount of the punitive damages to which the Plaintiff Class is entitled should be determined at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, the Representative Plaintiffs and the members of the Plaintiff Class ("Plaintiffs") respectfully requests that the Court enter judgment for the Plaintiffs:

(a)     Certifying the class described herein, and naming the Representative Plaintiffs as its class representatives, and their counsel as class counsel;

(b)     Against Defendants and in favor of the Plaintiffs on each cause of action asserted in this Complaint;

(c)     For statutory damages for the violation of New York State General Business Law § 349 in the amount of the actual damages suffered by each member of the Plaintiff Class or fifty dollars ($50.00) for each deceptive act, whichever is greater, the total aggregate amount in excess of $5,000,000.00, exclusive of interest and costs;

(d)     For statutory damages for the willful or knowing violation of New York State General Business Law § 349 in the amount of treble the actual damages incurred up to one thousand dollars ($1,000.00) for each deceptive act, the total aggregate amount in excess of $5,000,000.00, exclusive of interests and costs;

(e)     A declaration and determination by the Court that Defendants overcharged the consumer for the Hotel Occupancy Tax, State Sales Tax, and City Sales Tax by charging the Taxes at the Retail Rate or NYOP bid price while paying the Taxes on the Wholesale Rate and pocketing the difference and an Order enjoining Defendants from continuing this practice;

(f)     A declaration and determination by the Court that Defendants cannot generalize, misrepresent or mischaracterize the Taxes and Service Fees collected from the

consumer as has been the practice, but must itemize each Tax and Service Fee and an Order enjoining Defendants from continuing this practice;

(g)     A declaration and determination by the Court that Defendants have misrepresented and mislead the consumers into believing that Defendants are traditional travel agents acting on the consumers' behalf with the consumers' best interests in mind, and who receive only a fee from the consumer for those services and an Order enjoining Defendants from continuing this practice;

(h)     A declaration and determination by the Court that Defendants mislead the consumers into believing that, by purchasing a hotel room from Defendant, the consumer received the lowest cost for the hotel room, when the same room is available at a lower total cost if purchased directly from the hotel and an Order enjoining Defendants from continuing this practice;

(i)     For restitution and disgorgement of all monies improperly converted by Defendants;

(j)     For damages for Defendants' breach of their fiduciary obligation, including the disgorgement of all profits;

(k)     For damages for Defendants' breach of each contract entered into with each individual member of the Plaintiff Class;

(l)     For punitive damages;

(m)     For costs of suit incurred herein;

(n)     For pre-judgment interest to the extent allowed by law;

(o)     For reasonable and necessary attorneys' fees; and

(p)     For such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

The Representative Plaintiffs hereby requests, on behalf of themselves and the

Plaintiff Class, that a jury decide all factual issues in this case.

Dated: New York, New York
       December 10, 2008

BALBER PICKARD MALDONADO &
VAN DER TUIN, PC

By:

Roger Juan Maldonado (RM-7035)
Steven N. Blivess (SB-1231)

1370 Avenue of the Americas
New York, New York 10019
(212) 246-2400

*Attorneys for Plaintiffs*

EXHIBIT "A"



Flights | Hotels | Cars | Packages | Cruises | Tours & Attractions | PriceBreakers
Sign-In | My Profile | My Trips | Check Your Request | First Time Users |

# ❋ Your Hotel Receipt

Check-In Date: **Tuesday, September 25, 2007**

Check-Out Date: **Wednesday, September 26, 2007**

Priceline Hotel Request Number: **488-031-761-12**

Priceline Customer Service Number: **1-800-657-9168**

Hotel Name: **Wellington Hotel**
**871 Seventh Avenue At 55th Street**
**New York, New York 10019**
**212-247-3900**

Confirmation Number: **Room 1 - 116215268**

## Summary of Charges

Billing Name: **Marc Gutman**

Billing Address: **1062 Eldorado Dr**
**Superior, CO 80027**

Billing Date: **September 13, 2007**

Last 4 digits of Credit Card:

Your Offer Price: **$325.00**

Number of Rooms: 1

Number of Nights: 1

Subtotal: **$325.00**

Taxes and Service Fees: **$66.03**

Total Charges*: **$391.03**

*Prices are in US dollars.

[ ‹ PREV ]

*All material herein © 1998-2008 priceline.com Incorporated, all rights reserved.*
*PRICELINE, PRICELINE.COM and NAME YOUR OWN PRICE are*
*registered service marks of priceline.com Incorporated.*

U.S. Patents 5.794,207; 5,897.620; 6,085,169; 6,510,418 and 6,553,346.

(CST 2040530-50)

ws-104

investor relations | terms and conditions | privacy policy | adware/spyware policy | travel affiliate program | advertise with us | TV ads | jc


# Your Price Was Accepted

Congratulations, your price of **$325** was accepted by Wellington Hotel. Save even more when you add a rental car below. Your Priceline Hotel Request Number is **488-031-761-12**.

See your complete hotel itinerary and receipt for your trip below. Be sure to print out a copy of this page for your records and have it with you at check-in. If you have any questions, please visit our Customer Service Area.

**Your purcha**
**Click here to claim**
**on**

A Priceline.com m

 **Print Your Itinerary**      ✉ **Email Itinerary to a Friend**      **ZAGAT** Download your FREE NYC Trav

## Extend Your Stay

 **Add Nights**      Happy with the hotel we've selected for you? Extend your stay or book more rooms.
Click here to extend your stay at Wellington Hotel now.

## Add a Rental Car to Your Trip

      **Name Your Own Price® Rental Cars**
Add a name-brand rental car to your trip. Choose from 11 different car types provided by Alamo,
Avis, Budget, Hertz or National. Save up to 30% over leading sites.

## Add Tours & Attractions to Your Trip

Choose from our most popular add-ons below, or click "See All" to view everything we have to offer at you

      **Activities/Attractions - New York CityPass -  from $66/person**
CityPass is the revolutionary visitor-friendly program offering six famous New York attractions at one packaged low price. New York
CityPass saves you 50% - no need to wait in line, either!  more

      **Activities/Attractions - Garment Center Shopping Tour -  from $65/person**
See the neighborhood that is the epicenter of New York style and is home to NYC's best discounts. Sample sales, showrooms, fabric and
notions stores make this the perfect tour for bargain hunters and creative crafters. Wholesale prices on everything from beads to evening
gowns!  more

      **Activities/Attractions - SoHo and Nolita Shopping Tour -  from $38/person**
Stroll NYC's hottest neighborhoods, where celebrities get their style! Shop NYC's most unique boutiques, learn neighborhood trivia and see
the famed Cast Iron Historic District's architecture. A friendly guide makes this the perfect walking tour for both shoppers and sightseers. Get
exclusive shopping discounts, taste local treats and experience New York like a native.  more

      **Events & Shows - Chicago -  from $111.5/person**
CHICAGO is Broadway's red-hot musical smash, the recipient of six Tony® Awards, two Olivier® Awards, a Grammy® and thousands of
standing ovations.  more

See All Tours & Attractions

# Your Hotel Information

photo ID at the Front Desk. In addition, the hotel will require a major credit card to guarantee incid (phone calls, room service, parking, resort fees, energy charges, etc.) that you may incur while st; hotel. Should you have a special request, please contact your hotel directly at the number listed a coordinate your arrangements.



HOME

* Priceline's(R) Name Your Own Price(R) reservation system is different from fixed price travel sites. With Priceline, the exact I after purchase.

All material herein © 1998-2008 priceline.com Incorporated. all rights reserved.
PRICELINE, PRICELINE.COM and NAME YOUR OWN PRICE are
registered service marks of priceline.com Incorporated.
U.S. Patents 5,794,207; 5,897,620; 6,085,169; 6,510,418 and 6,553,346.

(CST 2040530-50)

ws-128

Happy with your hotel? Click here to extend your stay.

## Wellington Hotel ★ ★ ½

Upper Midtown - Central Park South
871 Seventh Avenue At 55th Street
New York, New York 10019
212-247-3900
See Hotel Website
View Map and Directions

Check-In Date:
**Tue, Sep 25, 2007 / After 03:00 PM**

Check-Out Date:
**Wed, Sep 26, 2007 / 12:00 PM**

Amenities:

# Reservation and Billing Information

**Reservation Information**

| | |
|---|---|
| Reservation Name: | Marc L Gutman |
| Hotel Confirmation Number: | 116215268 |
| Hotel Request Number: | 488-031-761-12 |

**Payment Information**

| | |
|---|---|
| Billing Name: | Marc Gutman |
| Credit Card: | American Express |

| | |
|---|---|
| Your Offer Price Per Room, Per Night: | $325.00 |
| Subtotal: | $325.00 |
| Taxes & Service Fees: | $66.03 |
| Total Charges*: | $391.03 |

\*Prices are in US dollars.

Happy with your hotel? Extend your stay.

**Your purchase is complete.**
**Click here to claim 10% Cash Back on this purchase!**

Click for details

*A Priceline.com marketing partner...*

# Important Hotel Check-In Details

Remember, your Priceline hotel reservation is non-refundable, non-transferable and non-changeabl
any questions or require further assistance, please visit our Customer Service area. You may also c
Customer Service Department toll-free at 1-800-657-9168. Please have your priceline Request Nu
031-761-12) and the phone number you used when you placed your request (303-818-6533) rea
call.

All rooms will accommodate 2 adults. Bed type requests (King, Queen, 2 Doubles, etc.) or other s
such as a non-smoking or smoking room should be requested through your confirmed hotel, can n
guaranteed and are based on availability.

Reservation is guaranteed for arrival on the confirmed check-in date only. If you do not check-in o
of your reservation and you do not alert the hotel in advance, the remaining portion of your reser
canceled and you will not be entitled to a refund.

When you check-in, please present the confirmation number(s) printed above (one for each room)

**What taxes and fees will I pay?**

In connection with facilitating your hotel transaction, the charge to your debit or credit card will include a charge for Taxes and for Service Fees. This charge includes an estimated amount to recover the amount we pay to the hotel in connection with your reservation for taxes owed by the hotel including, without limitation, sales and use tax, occupancy tax, room tax, excise tax, value added tax and/or other similar taxes. The amount paid to the hotel in connection with your reservation for taxes may vary from the amount we estimate and include in the charge to you. This charge also includes an amount to cover service costs we incur in connection with handling your reservation. The charge for Taxes and Service Fees varies based on a number of factors including, without limitation, the amount we pay the hotel and the location of the hotel where you will be staying, and may include profit that we retain.

We are not the vendor collecting and remitting taxes to the applicable taxing authorities. Our hotel suppliers, as vendors, include all applicable taxes in the amount billed to us and we pay over such amounts directly to the vendors. We are not a co-vendor associated with the vendor with whom we book or reserve our customer's travel arrangements. Taxability and the appropriate tax rate and the type of applicable taxes vary greatly by location.

Depending on the property you stay at you may also be charged (i) certain mandatory hotel specific service fees, for example, resort fees (which typically apply to resort type destinations and, if applicable, may range from $10 to $40 per day), energy surcharges, newspaper delivery fees, in-room safe fees, tourism fees, or housekeeping fees and/or (ii) certain optional incidental fees, for example, parking charges, minibar charges, phone calls, room service and movie rentals, etc.. These charges, if applicable, will be payable by you to the hotel directly at checkout. When you check in, a credit card or, in the hotel's discretion, a debit card, will be required to secure these charges and fees that you may incur during your stay. Please contact the hotel directly as to whether and which charges or service fees apply.

Please note that we are unable to facilitate a rebate of Canadian Goods and Services Tax ("GST") for customers booking Canadian hotel accommodations utilizing our services.

**Important Information Regarding Exchange Rates:** Purchases made on our web site are transacted exclusively in United States Dollars (USD). If you make a purchase from us using a non-USD-denominated credit or debit card, please be aware that, due to the constant fluctuation in exchange rates, our charge to your card or the estimated charge amount we provide you, may differ based on the exchange rate at the time you make your reservation versus the rate at the time the charge is reflected on your credit card statement. Also, in the event that we must credit your account, we will refund the exact USD amount initially charged and will not be responsible for any fluctuations in exchange rates which may cause differences in your billing statement.