UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11|15|10

_____ x

MATTHEW R. CHISTE, JASON SIDENER, and
CECILY LAMATTINA, on behalf of themselves and all
others similarly situated,

                  Plaintiffs,

    against

HOTELS.COM L.P., and EXPEDIA, INC. (WA),

                  Defendants.

08 Civ. 10676 (CM)

_____ x

JAMES SCHULTZ, on behalf of himself and all
others similarly situated,

                  Plaintiff,

    against

TRAVELOCITY.COM, LP, TRAVELOCITY.COM. INC.,
SITE59.COM, LLC, SABRE HOLDINGS CORP.,

                  Defendants.

08 Civ. 10744 (CM)

_____ x

MATTHEW CHISTE, DONALD SCHROUD,
and MARC GUTMAN, on behalf of themselves and all
others similarly situated,

                  Plaintiffs,

    against

PRICELINE.COM, INC.,

                  Defendant.

08 Civ. 10746 (CM)

_____ x

1

HEATHER PELUSO, on behalf of herself and all
others similarly situated

                                       10 Civ. 07522 (CM)

                Plaintiff,

    against

ORBITZ.COM, ORBITZ LLC, ORBITZ WORLDWIDE, INC.,
ORBITZ WORLWIDE DEVELOPMENT, LLC,
ORBITZ WORLWIDE INTERNATIONAL, LLC,
ORBITZ WORLWIDE, LLC, TRAVELPORT L.P.,
THE BLACKSTONE GROUP L.P., CENDANT
CORPORATION,

                Defendants.

_____x

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

McMahon, J.

Plaintiffs Matthew Chiste, Jason Sidener, and Cecily Lamattina, as named plaintiffs

acting on behalf of a class of similarly situated persons, commenced a purported class-action suit

against Defendants Hotels.com L.P. ("Hotels.com") and Expedia, Inc. (WA) ("Expedia"), to

recover damages and obtain injunctive relief for deceptive and misleading business practices,

breach of contract, conversion, and breach of fiduciary duty.[1]

In a virtually identical class-action complaint, plaintiffs Matthew Chiste, Donald

Schroud, and Marc Gutman allege false and misleading business practices by Priceline.com, Inc.

("Priceline") based, in part, on Priceline overcharging consumers for hotel-occupancy and sales

taxes when they use Priceline's website to make hotel reservations.[2]

---

[1] Hotels.com GP, LLC, Expedia, Inc. (DE), were also defendants in this suit, but all claims against them were discontinued by the Plaintiffs on April 13, 2009. On May 22, 2009, the Plaintiffs voluntarily dismissed their claims against Hotwire, Inc. and Travelnow.com, Inc.

[2] Lowest-Fare.com, Inc. and Travelweb, LLC were also defendants in this suit. On May 22, 2009, the Plaintiffs voluntarily dismissed these two defendants. The only remaining defendant is Priceline.

2

Plaintiff James Schultz filed a class-action complaint against Travelocity.com, LP ("Travelocity"), Travelocity.com, Inc., Site59.com, LLC, and Sabre Holdings Corp. alleging similar misconduct.

Heather Peluso recently filed a purported class-action suit against Orbitz.com ("Orbitz"), Orbitz LLC, Orbitz Worldwide, Inc., Orbitz Worldwide Development, LLC, Orbitz Worldwide International, LLC, Orbitz Worldwide, LLC, Travelport L.P., The Blackstone Group L.P., and Cendant Corporation alleging similar wrongdoing.

Presently before the Court are Hotels.com's, Priceline's, and Expedia's motions to dismiss all claims asserted by plaintiffs Chiste, Sidener, Lamattina, Schroud, and Gutman. Travelocity filed a motion to dismiss or, in the alternative, to transfer Schultz's suit based on a forum-selection clause in the User Agreement between Travelocity and plaintiff Schultz.

For the reasons discussed below, Travelocity's motion to transfer the suit against it to the Northern District of Texas is granted.

Hotels.com's, Priceline's, and Expedia's motions to dismiss are granted except for plaintiff Lamattina's claims under New York General Business Law § 349 (her first cause of action) against Hotels.com, and Schroud's breach-of-fiduciary-duty claim (his fifth cause of action) against the Priceline defendants. Unless Schroud can think of a good reason why I should not transfer this peculiar claim to his home forum of Illinois, I intend to do so.

Peluso's complaint was filed but recently, and the Court stayed it pending a decision on these motions. She has fourteen days to file a brief of no more than ten pages explaining why the Court should not dispose of her complaint in the same manner as it has disposed of the cases

against the other defendants.[3] The Orbitz Defendants have the same period—fourteen days—to move for dismissal of Peluso's unjust-enrichment claim (count seven), a claim that she alone asserts.

## BACKGROUND

Defendants are online travel companies that offer consumers the opportunity to make reservations at hotels worldwide at a discounted rate. Plaintiffs are consumers who used Defendants' websites to purchase a night or multiple nights' stay in a New York City hotel room.

Plaintiffs allege that Defendants operate their business using what is known as the "merchant model." (Compl. ¶¶ 23, 25.[4]) Under the merchant model, Defendants contract with hotels to obtain an inventory of rooms at a discounted rate (the "Wholesale Rate"). (Id. ¶ 23.) Defendants then charge a mark-up and offer the rooms to consumers at a higher "Retail Rate." (Id.) In this model, the Defendants are the merchants of record, and, as such, collect payment from consumers directly at the time the reservation is made, determine the cancellation policy, determine the mark-up or profit they will earn on each hotel night purchased by a consumer, and control if and how a consumer can lengthen or shorten their stay at the hotel. (Id.) Consumers pay for their hotel reservation online via Defendants' websites. Once payment is made, the transaction is complete.

Priceline also operates under a "pseudo-auction model" entitled "Name Your Own Price" ("NYOP"). (Priceline Compl. ¶ 22.) Under the NYOP model, a consumer selects her travel dates, a geographic location where she would like her hotel to be situated (*i.e.*, Midtown East,

---

[3] This is not an open invitation to reargue the merits of the determinations made here, but rather an opportunity to explain why Peluso's claims vis-a-vis Orbitz are somehow different from the claims asserted in the earlier-filed actions.

[4] For ease of reference, and because all of the complaints filed in these four suits are virtually identical, all citations to the complaint throughout this opinion refer to the complaint filed by Chiste against Hotels.com and Expedia. See Complaint, Chiste v. Hotels.com, L.P., No. 08 Civ. 10676. When allegations differ among the complaints, specific citations to a particular plaintiff's complaint are provided.

4

Upper West Side, etc.), and the quality of the hotel (*i.e.*, one, two, three stars, etc.). (Id.) The consumer also submits a "bid price"—the amount the consumer would like to pay for each night she stays at the hotel. (Id.) Priceline then searches for hotels with availability that meet the consumer's criteria. If the bid price is accepted, the consumer is advised of the taxes and service fees that will be charged along with the bid price. (Id.) The Priceline Plaintiffs allege that Priceline will not accept a bid price that is lower than a combination of (1) the cost of the room if reserved directly from the hotel and (2) the mark-up Priceline charges consumers. (Id.)

When a reservation is complete, consumers receive an invoice. (Compl. Ex. A.) The invoice lists the total room rate as well as the taxes and fees charged. (Id.) The crux of Plaintiffs' allegations stem from what is not disclosed on this invoice.

First, the Plaintiffs complain that the Defendants do not disclose on the invoice (or on their websites) that they are charging a mark-up for each hotel night purchased and the exact amount of the mark-up. (Id. ¶ 6.) Plaintiffs allege that this mark-up is an undisclosed fee and that Defendants' failure to disclose it is misleading. (Id. ¶¶ 6, 35.)

Second, Plaintiffs allege that Defendants are charging consumers a higher tax based on the Retail Rate consumers pay Defendants rather than the Wholesale Rate Defendants pay the hotels. (Id. ¶ 5.) Instead of remitting the full amount of taxes collected to the hotels, Defendants keep the difference between the tax collected and the amount remitted to the tax authorities (the "Tax Delta") as a profit or fee without disclosing it. (Id. ¶ 35.) Plaintiffs allege that the Tax Delta and the mark-up are improper unearned profits that the Defendants should not be permitted to retain. (Id. ¶ 6.)

Third, Plaintiffs allege that the invoice is deceptive and misleading because Defendants bundle the taxes charged with the service fees in one entry, instead of providing an itemized

breakdown of both charges. (Id. ¶ 35.) What's more, Plaintiffs allege that the service fee is calculated as a percentage of the Retail Price but the Retail Price includes Defendants' mark-up. (Id.) Thus, Plaintiffs allege that Defendants are charging "consumers a 'fee' calculated on a fee.'" (Id.)

In all four cases, the named Plaintiffs assert six identical causes of action.

Count one alleges deceptive business practices under New York General Business Law ("G.B.L.") § 349, because Defendants (1) charge consumers a higher tax and keep the Tax Delta as a profit without disclosing it; (2) retain a mark-up on the Wholesale Rate without disclosing the amount of the mark-up; (3) bundle the taxes with the service fees so that consumers do not know the amount of the service fee or taxes, and (4) deceive consumers into believing that Defendants offer the lowest possible rate on hotel rooms. (Id. ¶ 56.)

Count two seeks a declaratory judgment and injunctive relief based on Defendants alleged violation of G.B.L. § 349.

Count three seeks declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, for various common-law breaches.

Count four is a cause of action for conversion, alleging that Defendants improperly retained the Tax Delta and the mark-up on the Wholesale Rate. (Id. ¶ 70.)

Count five alleges that Defendants breached some fiduciary duty to consumers. Plaintiffs assert that Defendants portray themselves as travel agents and therefore owe consumers a fiduciary duty which was violated when they failed to disclose, among other things, the mark-up and the service fees. (Id. ¶ 77.)

Finally, count six alleges a breach-of-contract claim that relies on the User Agreement all consumers are bound by when using Defendants' websites.

6

Peluso asserts a seventh cause of action against the Orbitz Defendants for unjust enrichment. She alleges that the Orbitz Defendants fraudulently retained the excess taxes and service fees. (Orbitz Compl. ¶¶ 83–86.)

1. The Hotels.com and Expedia Parties (No. 08 Civ. 10676)

There are 3 representative plaintiffs alleging causes of action against Hotels.com and Expedia. Matthew Chiste is a Virginia resident who made his hotel reservation in May 2007 through expedia.com. (Compl. ¶ 12.) Jason Sidener is a Wisconsin resident who made his reservation in November 2004 through hotels.com. (Id.) Cecily Lamattina is a New York resident who used hotels.com in March 2007. (Id.) All three plaintiffs made reservations at New York City hotels.

Hotels.com LP is a Delaware limited partnership with its principal place of business in Texas. (Id. ¶ 13.) Expedia, Inc. (WA) is a Washington corporation with its principal place of business in Washington. (Id. ¶ 16.)

Chiste, Sidener, and Lamattina filed their complaint on December 9, 2008.

2. The Priceline Parties (No. 08 Civ. 10746)

Donald Schroud, an Illinois resident, and Marc Gutman, a Colorado resident, purchased stays in New York City hotels from Priceline.com in October 2007 and September 2007, respectively. (Priceline Compl. ¶ 12.) Chiste—who also asserts claims against Hotels.com— used priceline.com in November 2006 to make his New York City hotel reservation. (Id.) Priceline.com, Inc. is a Delaware corporation with its principal place of business in Connecticut. (Id.)

Chiste, Schroud, and Gutman filed their complaint on December 10, 2008.

7

3. The Travelocity Parties (No. 08 Civ. 10744)

James Schultz resides in Texas and used travelocity.com in October 2008 to make a
reservation at a New York City hotel. (Travelocity Compl. ¶ 12.) Defendants Travelocity.com,
LP, Travelocity.com, Inc., and Site59.com, LLC share a common parent—Sabre Holdings Corp.
(Id. ¶ 16.). Both Travelocity.com, LP and Travelocity.com, Inc. are Delaware entities with their
principal place of business in Texas. (Id. ¶¶ 13–14.) Site59.com, LLC is a Delaware entity with
its principal place of business in New York. (Id. ¶ 15.) Sabre Holdings is a Delaware
corporation. (Id. ¶ 16.)

Schultz filed his complaint on December 10, 2008.

4. The Orbitz Parties (No. 10 Civ. 7522)

Heather Peluso is an Alabama resident who used orbtiz.com in February 2009. (Orbitz
Compl. ¶ 9.) Orbitz LLC and Orbitz.com are Delaware limited liability entities with principal
places of business in Illinois. (Id. ¶¶ 10–11.)

Peluso filed her complaint on October 1, 2010.

On October 7, 2010, all four cases were consolidated, and the Peluso suit was stayed
pending the resolution of the motions to dismiss previously filed by Hotels.com, Expedia,
Travelocity, and Priceline.

Presently before the Court are motions to dismiss under Federal Rule of Civil Procedure
12(b)(6) filed by Priceline, Expedia, and Hotels.com. Travelocity filed a motion to dismiss
under Federal Rules of Civil Procedure 12(b)(1) or (3) or, alternatively, to transfer venue under
28 U.S.C. § 1404(a) to the Northern District of Texas.

8

## DISCUSSION

I.  **Schultz's Suit Against Travelocity (No. 08 Civ. 10744) Is Severed and Transferred To The Northern District Of Texas.**

Schultz asserts six causes of action against Travelocity.com, LP, Travelocity.com, Inc., Site59.com, LLC, and Sabre Holdings. The Travelocity Defendants move for dismissal based on Federal Rules of Civil Procedure 12(b)(1) or (b)(3) or, alternatively, a transfer of venue under 28 U.S.C. § 1404 based on the forum-selection clause in the Travelocity.com User Agreement.

The User Agreement for Travelocity.com states, "This Agreement and its performance shall be governed by the laws of the state of Texas, United States of America, without regard to its conflict of laws provisions. You consent and submit to the exclusive jurisdiction of the state and federal courts located in Tarrant county, the state of Texas, United States of America, in all questions and controversies arising out of your use of this site and this Agreement." (Declaration of Noreen Henry ("Henry Decl.") Ex. A ¶ 12.)

Schultz acknowledges that he agreed to be bound by the User Agreement when he made his hotel reservation on travelocity.com. (Travelocity Compl. ¶ 83.) Travelocity.com argues that the forum-selection clause is valid and its application mandatory. Rather than challenging the enforceability of the forum-selection clause, Schultz argues that the only proper remedy is to transfer the case to Texas under 28 U.S.C § 1404(a), because dismissal pursuant to Rules 12(b)(1) or (b)(3) would be improper.

A forum-selection clause does not divest a federal court of subject matter jurisdiction, so it would not be appropriate to dismiss this case pursuant to Rule 12(b)(1). New Moon Shipping Co. v. Man B & W Diesel AG, 121 F.3d 24, 28–29 (2d Cir. 1997). In New Moon, the Second Circuit explained, "[T]here is no existing mechanism with which forum selection enforcement is a perfect fit." Id. at 29. Dismissal for lack of subject matter jurisdiction, however, is misleading

because, "[W]e have long recognized that parties have no power by private contract to oust a federal court of jurisdiction otherwise obtaining." Id. at 28 (citations omitted).

The Travelocity Defendants do not raise any bar to jurisdiction in this Court other than the forum-selection clause. The Court has examined its own jurisdiction, as it does in every case, and has concluded that there is diversity jurisdiction—notwithstanding a lack of complete diversity— pursuant to 28 U.S.C. § 1332(d). (For a full discussion of this issue, see section I.1. below, in connection with the Travelocity Defendants' motion to transfer).[5]

Federal Rule of Civil Procedure 12(b)(3) authorizes dismissal of a complaint if venue is improper. Whether dismissal under Rule 12(b)(3) is proper when jurisdiction exists but the parties have agreed to litigate only in another forum pursuant to a valid forum-selection clause is an open question in this Circuit. See Licensed Practical Nurses, Technicians and Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F. Supp. 2d 393, 404–05 (S.D.N.Y. 2000) (citing cases); see also New Moon Shipping, 121 F.3d at 28–30. The better view, however, is this: "The fact that the parties contractually agreed to litigate disputes in another forum is not a question of venue, but one of contract . . . ." Licensed Practical Nurses, 131 F. Supp. 2d at 404–05 (quoting Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc., 825 F. Supp. 671, 678–79 (D.N.J. 1993)). Venue is governed by statute, and the parties' agreement to litigate elsewhere does not change the fact that venue is statutorily proper here. It is therefore misleading to dismiss Schultz's suit for improper venue under Rule 12(b)(3). Haskel v. FPR Registry, 862 F. Supp. 909, 915–16 (E.D.N.Y. 1994); Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc., 825 F. Supp. 671, 678–79 (D.N.J. 1993).

---

[5] There is no federal-question jurisdiction; although plaintiff purports to assert a claim under the Declaratory Judgment Act (see Count III), that statute does not confer subject-matter jurisdiction on the court. Correspondent Servs. Corp. v. First Equities Corp. of Florida, 442 F.3d 767, 769 (2d Cir. 2006) (per curiam).

Venue does lie in this district pursuant to 28 U.S.C. § 1391(c), because Travelocity and its co-defendants are corporations and are subject to personal jurisdiction here.

Since the case cannot be dismissed for lack of either subject-matter jurisdiction or venue, the only mechanism for enforcing the forum-selection clause is a transfer pursuant to 28 U.S.C. § 1404(a). I grant that motion.

28 U.S.C. § 1404(a) provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." To obtain a transfer of venue to the Northern District of Texas, Travelocity "bears the burden of establishing 1) that the action is one that 'might have been brought' in the district to which [Travelocity] seeks to have it transferred, and 2) that transfer is appropriate based on the convenience of the parties, the convenience of witnesses and the interests of justice." POSVEN, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 400–01 (S.D.N.Y. 2004). Courts employ an "individualized, case-by-case consideration of convenience and fairness" in determining if a transfer under §1404(a) is proper. Reliance Ins. Co. v. Six Star, Inc., 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "This determination is subject to the sound discretion of the district court." POSVEN, 303 F. Supp. 2d at 401.

In this case, both prongs of § 1404(a) are satisfied.

1.      The action "might have been brought" in the Northern District of Texas.

The threshold question is whether Schultz could have filed his suit against Travelocity in the Northern District of Texas.

11

A suit is properly filed in any district where subject-matter and personal jurisdiction exist and where venue is proper. Schechter v. Tauck Tours, Inc., 17 F. Supp. 2d 255, 258 (S.D.N.Y. 1998).

The federal court in the Northern District of Texas has subject-matter jurisdiction based on the diversity of the parties. The forum-selection clause is irrelevant in this context since parties cannot confer federal jurisdiction by context; at first blush, it appears that diversity is lacking because Schultz (the plaintiff) and Travelocity (one of the defendants) are both domiciled in Texas. However, in the Class Action Fairness Act, Congress provided for a relaxed form of diversity in class actions: diversity exists as long as "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d); see also Anwar v Fairfield Greenwich Ltd., 676 F. Supp. 2d 285, 292 (S.D.N.Y. 2009). Here, Schultz is a citizen of Texas, and one of the defendants (Site59.com) is a citizen of a Delaware (place of incorporation) and New York (principal place of business). Thus, a federal court has subject-matter jurisdiction based on diversity. 28 U.S.C. § 1332(d)(2)(A).

The Northern District of Texas has personal jurisdiction over the parties that reside in Texas—Schultz, Travelocity.com, LP and Travelocity.com, Inc. But all of the Defendants in Schultz's suit have impliedly consented to personal jurisdiction in the Northern District of Texas, by virtue of their motion seeking to transfer the suit to that district. No further analysis is required.

Venue may lie in more than one district. See Greenwich Life Settlements, Inc. v. Viasource Funding Group, LLC, 2010 U.S. Dist. LEXIS 105626, at *31 (S.D.N.Y. Oct. 4, 2010). Statutory venue lies in the Northern District of Texas under 28 U.S.C. § 1391(a)(2), because a "substantial part of the events or omissions giving rise to the claim occurred" in the district

where Travelocity's corporate headquarters are. Additionally, the parties contractually agreed that venue lies in the Northern District of Texas. (Henry Decl. Ex. A ¶ 12.)

2.     Convenience, fairness, and the interests of justice weigh in favor of transfer.

In balancing the convenience and fairness of transferring the suit to Texas, this Court considers several factors: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based upon the totality of the circumstances. POSVEN, 303 F. Supp. 2d at 404.

"There is no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). "Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." Citigroup, 97 F. Supp. 2d at 561 (citing First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989)). While not dispositive, "[t]he presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

The first four factors—the convenience of witnesses, the location of relevant documents, the convenience of the parties, and the location of the operative facts—all favor transferring Schultz's suit to Texas.

The forum's convenience for witnesses "is probably considered the single most important factor in the analysis of whether a transfer should be granted." Schnabel v. Ramsey Quantitative

13

Sys., Inc., 322 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) (quoting Coker v. Bank of Am., 984 F. Supp.757, 765 (S.D.N.Y. 1997)). The majority of the witnesses, apart from Schultz, will likely be Travelocity employees—who can testify as to Travelocity's User Agreement and practice with regards to billing consumers for hotel reservations. Most of these employees are located in Texas, where Travelocity is headquartered. Schultz is also a Texas resident.

Additionally, because Texas is where Schultz resides, it is likely that he used the Internet in Texas to make his reservation on travelocity.com. The location of the hotel is the only tie to New York. But Schultz paid for his hotel reservation over the Internet before he arrived in New York, so the harm of which he complains (being overcharged for taxes and paying fees without knowing it) was inflicted on him in Texas when he secured his hotel reservation. Because the transaction was complete at the time the reservation was made on-line, any breach of contract, conversion, or breach of fiduciary duty occurred where Schultz accessed the website. Thus, not only will any necessary documents be located in Texas, but the alleged misconduct by Travelocity occurred in Texas long before Schultz arrived in New York.

Further, because most of the possible witnesses are located in Texas, a Texas court is better able to compel their attendance. Schultz is a Texas resident, so presumably litigating in Texas is the less costly option for him. Schultz's argument that litigating in New York is more economical because other suits have been filed here presupposes that this Court will certify a nationwide class of plaintiffs.

Texas courts are also more familiar with Texas law than this court is, and Texas law governs most, if not all, of the claims in Schultz's suit.[6]

---

[6] Because Schultz is not a resident of New York and the alleged harm occurred outside of New York, his claim under New York's General Business Law § 349 will inevitably be dismissed. (See discussion infra Part III.) This leaves only his claims for conversion, breach of contract, and breach of fiduciary duty, which are governed by Texas law.

14

The forum-selection clause is entitled to substantial consideration. Stewart Org., 487 U.S. at 29. Here, the parties agreed that Texas courts would have exclusive jurisdiction.

By contrast, Schultz's choice of forum is not entitled to great weight. Ordinarily, of course, a plaintiff's choice of forum "is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001). However, a plaintiff's choice is entitled to less deference where the connection between the case and the chosen forum is minimal,. Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). Apart from the location of the hotel he reserved, there is no connection between the actions that allegedly harmed Schultz and New York. Any harm he may have suffered occurred in Texas.

Trial efficiency and the interests of justice also favor a transfer to the Northern District of Texas. "The dockets of the competing districts are relevant to this inquiry" and, as Travelocity points out in its brief, this district has approximately six times more pending cases than the Northern District of Texas. Billing v. Commerce One, Inc., 186 F. Supp. 2d 375, 379 (S.D.N.Y. 2002). In addition, where, as here, the locus of operative facts, the probable witnesses and documents, and all of the parties are located in the transferee forum, the interests of justice favor a transfer. See City of Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp., 2010 U.S. Dist. LEXIS 50410, at **12–13 (S.D.N.Y. May 21, 2010).

The overwhelming majority of the factors weigh in favor of transfer, and the two most significant factors—the forum-selection clause and the forum's convenience for witnesses—weigh strongly in favor of litigating this suit in Texas. The only factor that favors keeping Schultz in New York is that he selected this forum, but his lack of ties to New York renders that factor of minimal importance.

15

For the above reasons, Schultz's suit (No. 08 Civ. 10744) is severed and transferred to the United States District Court for the Northern District of Texas. For the remainder of this opinion, any discussion of the "Plaintiffs' claims" does not include Schultz.

### THE MOTION TO DISMISS THE REMAINING COMPLAINTS

### III. All Plaintiffs' First And Second Causes Of Action (G.B.L. § 349) Are Dismissed Except For Lamattina's Firs Cause Of Action.

The first cause of action in each complaint asserts a claim under New York General Business Law ("G.B.L.") § 349. G.B.L. § 349(a) makes unlawful "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To state a claim under G.B.L. § 349, a plaintiff must allege that "(1) defendant is engaging in an act or practice that is deceptive or misleading in a material way, and (2) plaintiff has been injured by reason thereof." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (N.Y. 1995).

Priceline, Expedia, and Hotels.com argue that the G.B.L. § 349 claim must be dismissed because the transaction in which the Plaintiffs were allegedly deceived did not occur in New York. The Priceline plaintiffs (Chiste, Schroud, and Gutman) are out-of-state residents. (Priceline Compl. ¶ 12.) Two of the Hotels.com plaintiffs (Chiste and Sidener) are also out-of-state residents. (Hotels.com Compl. ¶ 12.) Peluso (the Orbitz plaintiff) is an Alabama resident. (Orbitz Compl. ¶ 9.) Lamattina (one of the Hotels.com plaintiffs) is the only plaintiff who is a New York resident. (Priceline Compl. ¶ 12.) Her claim will be considered separately.

A. Plaintiffs Schroud's, Gutman's, Chiste's, and Sidener's G.B.L. § 349 claims are dismissed.

New York law is clear that G.B.L. § 349 does not apply to out-of-state plaintiffs who were allegedly deceived outside of New York. "[T]he transaction in which the consumer is

16

deceived must occur in New York" to be actionable under N.Y. General Business Law § 349."
See Goshen v. Mut. Life Ins. Co. of New York, 98 N.Y.2d 314, 324 (N.Y. 2002).

Priceline, Expedia, and Hotels.com argue that the deception alleged by the Plaintiffs
occurred outside New York; specifically, in the state where each plaintiff used the Internet to
visit priceline.com, expedia.com, or hotels.com to make their hotel reservations. Plaintiffs have
not alleged that they visited these websites in any place but their home state; nothing in any
complaint suggests that Plaintiffs visited the Defendants' websites in New York.

Plaintiffs, however, argue that the deceptive practices occurred in New York. Plaintiffs
point to the fact that the deceptive transactions relating to the Tax Delta are not completed until
the consumer checks out of the New York hotel. Moreover, Plaintiffs argue that Defendants are
contracting to sell a stay in a New York hotel.

Plaintiffs' argument is not persuasive. In Goshen, the New York Court of Appeals
examined the text of G.B.L. § 349 in determining its territorial reach. Section 349(a) states,
"Deceptive acts or practices in the conduct of any business, trade or commerce or in the
furnishing of any service in this state are hereby declared unlawful." N.Y. G.B.L. § 349. The
court concluded that the phrase "in this state" applies to "the conduct of any business, trade or
commerce [or] the furnishing of any service." Goshen, 98 N.Y.2d at 325 (alteration in original).
"The phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme
or marketing strategy, but the actual misrepresentation or omission to a consumer. Thus, to
qualify as a prohibited act under the statute, the deception of a consumer must occur in New
York." Id.

The plaintiff in Goshen argued that the allegedly deceptive practice was conceived in
New York, by a company doing business in New York, but he himself was a resident of Florida.

17

The court ruled that the deception occurred outside New York, where the plaintiff purchased the allegedly deceptive insurance policy and where he paid the premiums on that policy. Id. at 326.

Plaintiffs here made and paid for their hotel reservations on the Internet from their respective home states. The alleged deceptive practice—the failure to disclose the mark-up, retention of the Tax Delta, and the bundling of the service fees and taxes in the invoice—occurred at the time the hotel reservations were made on the websites; they did not occur when Plaintiffs checked in to the hotels. Consequently, any deception occurred when the reservations were made and all of the Plaintiffs, except for Lamattina, made their hotel reservations outside of New York. Lamattina is therefore the only named plaintiff who can assert a valid claim under GBL § 349.

Accordingly, the first cause of action asserted by Chiste, Schroud, and Gutman against Priceline (No. 08 Civ. 10746) is dismissed. Chiste's first cause of action against Expedia and Sidener's first cause of action against Hotels.com (No. 08 Civ. 10676) are also dismissed.

B. Lamattina's GBL § 349 claim against Hotels.com is not dismissed.

Hotels.com argues that Lamattina's G.B.L. § 349 claim should be dismissed because she does not adequately plead that Hotels.com's conduct was materially deceptive. Hotels.com argues that there was no deception, because the bundling of taxes and fees and the mark-up were disclosed to her before she made her hotel reservation, and she paid no more than she was told she would pay.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Thus, unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." Id. at 570; Iqbal, 129 S. Ct. at 1950–51.

Three elements are necessary to state a claim under G.B.L. § 349: (1) "the challenged act or practice was consumer-oriented;" (2) the practice was "misleading in a material way;" and (3) "the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (N.Y. 2000) (citations omitted). To determine whether an act or practice is materially misleading, a court looks to whether it could "mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (N.Y. 1995). It is not necessary for the plaintiff to demonstrate that the defendant acted intentionally or with scienter. Watts v. Jackson Hewitt Tax Serv. Inc., 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008). "The rule imposes an objective standard by taking into account what a reasonable consumer would do under the plaintiff's particular circumstances. There can be no claim for deceptive acts or practices, however, when the alleged deceptive practice was fully disclosed." Id.

19

In her complaint, Lamattina includes several examples of allegedly deceptive and misleading behavior by Hotels.com.

First, Lamattina claims that Hotels.com charges consumers a tax based on the Retail Rate, but remits a tax to hotels based on the lower Wholesale Rate—and keeps the difference without disclosing it. (Compl. ¶ 35.)

Second, Lamattina alleges that Hotels.com charges consumers a service fee, and then lumps that fee with the taxes collected so that consumers are unaware of the exact amount of the service fee. (Id.)

Third, Lamattina alleges that Hotels.com does not disclose to consumers the difference between the Wholesale Rate and the Retail Rate—in other words, it does not disclose the amount of its profit on any transaction. (Id.)

The thrust of Lamattina's allegations are that consumers are deceived into believing that they are paying the lowest possible rate for their hotel stay, when they could in fact get a lower rate by dealing directly with the hotel—and that this is because Hotels.com does not itemize certain fees, does not disclose its profit margin, and charges more in taxes than is actually owed.

Indeed, at a recent pre-trial conference, counsel for Lamattina insisted that the real deceptive practice here was that consumers were led to believe that it was cheaper to book hotels through Hotels.com, when in fact it could have been cheaper to book directly with the hotel.

However, I reject this last suggestion out of hand. The complaint contains conclusory allegations that Hotels.com's "advertising and statements" deceived consumers into believing that it "provide[s] the lowest possible rate on the hotel room." (See Hotels.com Compl. ¶¶ 35.9, 56.9.) A blanket allegation that Hotels.com's "advertising and statements" lead consumers to believe that it is the lowest-cost provider of hotel rooms is insufficient to plead a materially

20

misleading "deceptive act or practice." See Woods v. Maytag Co., 2010 U.S. Dist. LEXIS 116595, at \*\*41–45 (E.D.N.Y. Nov. 2, 2010). Lamattina provides no examples of the alleged deceptive advertising or statements by Hotels.com, and, even on a motion to dismiss, this Court need not accept her conclusory statements. Iqbal, 129 S. Ct. at 1949–50. Lamattina was quoted the exact amount she would pay for her hotel reservation. She was also informed that the total cost of her hotel reservation included a service fee. Knowing what it would cost her to book with Hotels.com, Lamattina was free to shop around to determine if Hotels.com was offering her the best bargain, or if she could do better—whether on another website or by purchasing directly from the vendor (the hotel).

Turning to Lamattina's other allegations, her argument that Hotels.com's failure to disclose that it was making a profit on each reservation was deceptive and misleading under G.B.L. § 349 is not persuasive. The argument attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable under G.B.L. § 349. G.B.L. § 349 requires that the alleged deceptive act be "likely to mislead a *reasonable* consumer acting *reasonably* under the circumstances." Oswego Laborers, 85 N.Y.2d at 26 (emphasis added); see also Estate of Pew v. Cardarelli, 2009 U.S. Dist. LEXIS 90090, at \*5 (N.D.N.Y. Sept. 29, 2009). Any reasonable consumer would understand that businesses are in business to make a profit.

Lamattina's allegation that Hotels.com always charges a consumer more in taxes than it pays the hotel is, however, sufficient to plead a materially deceptive practice under G.B.L. § 349. This claim survives due to the peculiar (and syntactically difficult) wording of the Hotels.com User Agreement, which provides, in relevant part:

The tax recovery charge is assessed to recover the amount we pay to the hotel in connection with your reservation for sales and use, occupancy, room tax excise tax, value added and other similar taxes etc., and the balance of the additional amount is a fee we charge in connection with the handling of your

21

reservation. Our service fee varies based on the amount and location of your reservation.

We are not the vendor collecting and remitting said tax to the applicable tax authorities. The vendors bill all applicable taxes to us and we remit such tax directly to the vendor. We are not a co-vendor associated with the vendor with whom we book or reserve our customer's travel arrangements. Taxability and the appropriate tax rate vary greatly by location. Our actual tax cost paid to the vendor may vary from the tax recovery charge, depending upon the rates, taxability, etc. in effect at the time of the actual use of the hotel, automobile, etc. by our customer.

(Declaration of Steve Dumaine ("Dumaine Decl.") Ex. B.)[7]

The first sentence of the excerpted provision explains that the tax paid in connection with the "tax recovery charge" is the amount of taxes "we pay to the hotel." The first sentence also discloses that the "balance of the additional amount" will be retained as a service fee. So the consumer is advised that he or she will pay both taxes and a service fee in addition to the tax fee for the room. Lamattina's argument that Hotels.com was required to itemize its fees is meritless. It is true that Hotels.com tells the consumer that the consumer will be charged for taxes and a service fee; that the consumer pays taxes and a service fee; and that when the consumer reserves her room the total amount of the taxes and fees she would incur was disclosed to her. Lamattina knew exactly how much she was going to pay for her room before she made her reservation. (Hotels.com Compl. Ex. A.) Unlike the plaintiff in Watts v. Jackson Hewitt Tax Serv., Inc., 579 F. Supp. 2d 334 (E.D.N.Y. 2008), Lamattina was not shown one advertised price and later charged a different price, based on undisclosed surcharges. There is no allegation that Lamattina paid a dime more for her hotel room than she was first informed and then charged by Hotels.com.

---

[7] Although the Hotels.com User Agreement is not attached to Lamattina's complaint, it is excerpted, referenced, and relied on in the complaint. The full User Agreement can therefore be considered by this Court in analyzing Hotels.com's motion to dismiss. Tsering v. Wong, 2008 WL 4525471, at *2 (S.D.N.Y. Oct. 3, 2008).

22

However, the way the sentence is constructed, it is not clear whether the "balance of the additional amount" (*i.e.*, the service fee) is part of the "tax recovery charge," or is some separately stated "additional amount." Assuming arguendo that the User Agreement adequately discloses the "bundled" tax and service fee, as Hotels.com contends, the complaint nonetheless alleges that the amount actually remitted to the state (in this case, New York state) for taxes *always* differs from (and is *always* less than) the "tax" component of the "tax recovery charge." (Hotels.com Compl. ¶¶ 4, 35.11, 40.) Thus, despite the User Agreement's disclosure that the "actual tax cost paid" to the hotels "*may* vary from the tax recovery charge," Lamattina alleges that the actual tax cost *will always* vary because Hotels.com always collects a tax on the Retail Rate, rather than the required Wholesale Rate. (Id. ¶¶ 35, 39 (emphasis added).) In this respect, Lamattina's allegation is similar to one upheld in Watts. In Watts, Jackson Hewitt promoted its affordable tax-preparation services on fliers which explained that the minimum fee consumers paid for the service varied depending on the complexity of the tax return. 579 F. Supp. 2d at 340–41. The fliers, however, did not disclose the existence of a 15% fee that was applied to all consumers' final invoice during peak tax-preparation season—meaning that no consumer ever paid the advertised minimum fee for the tax-preparation service during that time. Id. at 347. The court suggested that "[w]hen a defendant exclusively possesses information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice." Id. (citing Oswego, 85 N.Y.2d at 27). Similarly, Hotels.com did not disclose that it collects a tax on the Retail Rate—information a consumer would want to know but could not discover from the User Agreement or Hotels.com's invoice.

This particular failure to disclose may be material, even though the consumer should expect that Hotels.com will collect a service fee (and is informed that Hotels.com will collect a

23

fee for its service). A consumer would not necessarily expect that Hotels.com will collect more in taxes than it is actually required to collect by law, and might choice to do business elsewhere if that fact were disclosed. "[A] material claim is one that 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Bildstein v. MasterCard Int'l Inc., 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004) (quoting Novartis Corp v. FTC, 223 F.3d 783, 787 (D.C. Cir. 2000) (alteration in original)). The amount of "tax" collected by Hotels.com—because it is more than the amount the hotel would charge—is material information to a consumer who is seeking the lowest-cost hotel reservation; and Lamattina has alleged that had she of known that making her reservation with Hotels.com was more costly (*i.e.*, had she of known that Hotels.com collected more in taxes than the actual hotel) she would not have used Hotels.com to make her reservation. (Hotels.com Compl. ¶¶ 35.9, 56.9, 80.)

Accordingly, Lamattina in this respect (and this respect only) has pleaded a materially deceptive act as required by G.B.L. § 349.

## C. Plaintiffs' claims for declaratory and injunctive relief based on G.B.L. § 349 are dismissed.

In count two, each Plaintiff seeks a declaratory judgment establishing that the Defendants violated G.B.L. § 349 and an injunction against further violations.

Declaratory judgments and injunctions are remedies, not causes of action. Pace v. Schwartz, 680 F. Supp. 2d 591, 594 (S.D.N.Y. 2010); Five Star Dev. Resort Cmty., LLC v. iStar RC Paradise Valley, LLC, 2010 U.S. Dist. LEXIS 67029, at **11–12 (S.D.N.Y. July 6, 2010). None of the Plaintiffs, except for Lamattina, has pleaded a viable G.B.L. § 349 claim, and, therefore, none of them, except for Lamattina, is entitled to either a declaratory judgment or an injunction to identify or remediate any violation of G.B.L. § 349(a). See Arbitron, Inc. v. Kiefl,

24

2010 U.S. Dist. LEXIS 83597, at *10 (S.D.N.Y. Aug. 13, 2010). Accordingly, all of the

Plaintiffs' second causes of action, except for Lamattina's, are dismissed; Lamattina's claim is

dismissed as well, but these remedies are deemed added to her ad damnum clause.

## II.     Plaintiffs' Third Causes Of Action, Which Seek Declaratory And Injunctive Relief Based On Plaintiffs' State-Law Claims, Are Dismissed.

In their third causes of action, all of the Plaintiffs seek a declaratory judgment

establishing Defendants liability for conversion, breach of contract, and breach of fiduciary duty.

But in their fourth, fifth, and sixth causes of action, Plaintiffs assert state-law claims for

conversion (count four), breach of fiduciary duty (count five), and breach of contract (count six).

To the extent that it seeks a declaration that the Defendants are liable for conversion, breach of

fiduciary duty and breach of contract, the third cause of action merely duplicates the substantive

counts that follow.

Whether to exercise declaratory jurisdiction is within the district court's broad discretion.

See Muller v. Olin Mathieson Chem. Corp., 404 F.2d 501, 505 (2d Cir. 1968). In determining

whether to exercise declaratory jurisdiction, a court considers whether a declaratory judgment

will (1) "serve a useful purpose in clarifying and settling the legal relations in issue;" or (2)

"afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."

Cont'l Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992) (citation omitted).

Neither objective is satisfied here.

The determination the Plaintiffs seek will be adjudicated in their common-law causes of

action so a declaratory judgment will serve no useful purpose. See, e.g., CAMOFI Master LDC

v. Coll. P'ship, Inc., 452 F. Supp. 2d 462, 480–81 (S.D.N.Y. 2006). The fundamental purpose of

the Declaratory Judgment Act is to allow a plaintiff not certain of his rights to "'avoid accrual of

avoidable damages,'" and "'to afford him an early adjudication without waiting until his

adversary should see fit to begin suit, after damage has accrued.'" United States v. Doherty, 786 F.2d 491, 498 (2d Cir. 1986) (quoting Luckenbach S.S. Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963)); see also In re Combustible Equip. Assoc., 838 F.2d 35, 37 (2d Cir. 1988). Here, there is no cloud of uncertainty affecting the Plaintiffs' rights that can be lifted by a declaratory judgment. The harm, if any, happened in the past and, "There is no basis for declaratory relief where only past acts are involved." Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Group, Inc., 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003); see also Gianni Sport Ltd. v. Metallica, 2000 WL 1773511, at *4 (S.D.N.Y. Dec. 4, 2000). Therefore, the third cause of action is dismissed to the extent that it seeks declaratory relief.

Injunction is not a separate cause of action; it is a remedy. Reuben H. Donnelley Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 293 (S.D.N.Y. 1995); Lekki Capital Corp. v. Automatic Data Processing, Inc., 2002 U.S. Dist. LEXIS 8538, *11 (S.D.N.Y. May 14, 2002). If the Plaintiffs have viable claims under any of the fourth, fifth, or sixth causes of action, and if those claims entitle them to injunctive relief, then they can apply for that remedy once liability has been established.

Accordingly, the third cause of action asserted by all of the Plaintiffs is dismissed.

### III. Plaintiffs' Fourth Causes of Action For Conversion Are Dismissed.

A. The applicable law for all common-law claims brought by each Plaintiff.

In cases where jurisdiction is based on diversity, a federal court will apply the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Plaintiffs allege that their dealings with Defendants are governed by Defendants' User Agreements, to which each Plaintiff agreed prior to making their hotel reservation. (Compl. ¶ 85.) These agreements all contain choice-of-law clauses.

Plaintiffs argue that, under New York's choice-of-law rules, the choice-of-law clauses in the User Agreements are unenforceable because New York has greater interests in this dispute and applying the law of another state violates New York public policy. New York courts typically enforce a choice-of-law clause in a contract when the chosen law has a "reasonable relationship" to the contract and does not violate New York public policy. LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc., 92 F. Supp. 2d 119, 127 (E.D.N.Y. 2000); see also Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991).

Here, there is a reasonable relationship between the law chosen in the User Agreement and the Defendants. See, e.g., Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999). For all of the User Agreements, the choice-of-law clause applies the law of the state where the Defendant has its principle place of business. The Plaintiffs are located throughout the country and, as a result, there is no single domicile for all of the Plaintiffs. The contracts were entered into in different states where Plaintiffs accessed the Internet to use Defendants' websites.

Additionally, the Plaintiffs' breach-of-contract claims do not depend on the location of the hotel. If the Defendants breached the User Agreements, the breach is alleged to have occurred before the Plaintiffs arrived in New York and the fact that their hotel reservation was for a New York hotel is of no importance to their claims. Although Plaintiffs argue that a hotel located in New York could not make its contract with a guest subject to the law of a state other than New York, Plaintiffs did not contract with the hotel—they contracted with Defendants (none of whom is located in New York), and they did so from outside of New York. Ultimately, there is a greater relationship between the chosen law and the User Agreements than there is between New York and the User Agreements.

27

Plaintiffs' argument that applying another states' law violates New York public policy is not persuasive. The application of another states' law would not offend New York public policy. The named plaintiffs (other than Lamattina) are from outside New York; their contracts were entered into outside New York; and, to the extent that the applicable choice of law covers torts, the torts (if any occurred) are alleged to have happened outside New York. Whether Defendants were required to remit to the New York taxing authorities the excess tax collected (based on the Retail Rate) is a question the New York tax authorities are litigating in a separate suit; that question is not before this Court.

Thus, the choice-of-law clauses in the User Agreements are enforceable and will determine what states' law applies to each Plaintiffs' common-law claims. I will discuss the choice of law in connection with the analysis of each claim.

All of the Plaintiffs assert three common-law claims: one for breach of contract which is based on an alleged breach by Defendants of the User Agreements and two tort claims (for conversion and breach of fiduciary duty).

### (1) *Lamattina's conversion claim against Hotels.com*

(a) Applicable Law

Lamattina is bound by the September 2006-2007 User Agreement because she used hotels.com in 2007. That agreement specifically provides that "the internal laws of the State of Texas . . . will govern this agreement and any dispute of any kind that arises between you and the Company or its affiliates." (Dumaine Decl. Ex. B.) To determine the scope of the choice-of-law provision in the User Agreement, this Court must look to New York law. See Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 333 (2d Cir. 2005). New York courts have interpreted the "any dispute of any kind" language to be sufficiently broad to apply to both tort

28

and contract claims arising from the agreement. See Turtur v. Rothschild Registry Int'l, Inc., 26 F.3d 304, 309–10 (2d Cir. 1994). The choice-of-law provision in Lamattina's User Agreement applies to all of her common-law claims.

(b) Conversion

In Texas, "Conversion consists of the wrongful exercise of dominion or control over another's property in denial of, or inconsistent with, the other's rights." Newsome v. Charter Bank Colonial, 940 S.W.2d 157, 161 (Tex. App. 1994). "Money is subject to conversion only when it can be identified as a specific chattel, and not where an indebtedness may be discharged by the payment of money generally. An action for conversion of money will lie where the money is (1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by its keeper." Id.; see also In re TXNB Internal Case, 483 F.3d 292, 308 (5th Cir. 2007).

Lamattina's allegations do not establish the four elements needed to plead a claim for conversion under Texas law. Lamattina seeks a refund on the theory that she was overcharged for her hotel room, based on the alleged overcharges for taxes, service fees, and the mark-up on the Wholesale Rate that she paid Hotels.com. But nothing about that allegation supports an inference that Lamattina gave Hotels.com the money for safe keeping and with the intent that it be segregated—both of which are essential elements of a conversion claim for money. Lamattina's fourth cause of action for conversion is dismissed because she has not pled facts that allege the existence of the elements of a conversion claim.

29

## (2) *Sidener's conversion claim against Hotels.com*

### (a) Applicable Law

Sidener is bound by the July 2004-2006 User Agreement because he used hotels.com in November 2004. The choice-of-law provision in Sidener's User Agreement is identical to the choice-of-law clause that is applicable to Lamattina. (Dumaine Decl. Ex. A.) Thus, Sidener's claims are also governed by Texas law.

Hotels.com argues that Sidener's conversion claim—and, indeed, all of his common law claims—are barred by the statute of limitations. In diversity cases, federal courts apply the choice-of-law rules of the forum state (New York) to determine what state's laws will determine the limitations period. See Dutton v. Glass, 2005 WL 146503, at *2 (S.D.N.Y. Jan. 20, 2005).

For causes of action that accrued outside of the state, New York applies its borrowing statute, N.Y. C.P.L.R. § 202. The borrowing statute requires that a court, when presented with a cause of action accruing outside New York apply whichever statute of limitations is shorter— New York's or that of the state where the cause of action accrued. See Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002); Pricaspian Dev. Corp. v. Royal Dutch Shell, PLC, 2010 U.S. App. LEXIS 13211, at **2-3 (2d Cir. June 29, 2010). In New York, "a cause of action accrues at the time and in the place of the injury." Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (N.Y. 1999). For purely economic injuries, "the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." Cantor Fitzgerald, 313 F.3d at 710.

Because Sidener's injury is economic (*i.e.*, the overpayment of taxes and fees), his causes of action accrued in Wisconsin—where he resides and where he made his reservation. Thus, the

30

shorter of New York's or Wisconsin's statute of limitations will apply to Sidener's common-law claims.

Sidener made his hotel reservation in November 2004. Sidener's economic injury accrued at the time he paid the allegedly excess taxes, the service fees, and was charged the higher Retail Rate for his hotel reservation. Thus, his causes of action accrued in November 2004.

Claims for conversion have a three-year statute of limitations in New York. N.Y. C.P.L.R. § 214(3); Beesmer v. Besicorp Dev., Inc., 900 N.Y.S.2d 472, 476 (N.Y. App. Div. 2010). Wisconsin has a six-year statute of limitations for conversion claims. Wis. Stat. Ann. § 893.51(1) (West 2006), Kane v. Berken, 1999 WL 557747, at *4 (Wis. Ct. App. July 30, 1999). Because he chose to sue in New York, Sidener is bound by New York's shorter three-year limitations period, which means that Sidener's conversion claim is untimely (it was not filed until December 9, 2008).

Sidener argues that, under New York law, the limitations period should be equitably tolled. "It is . . . fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." Zumpano v. Quinn, 6 N.Y.3d 666, 674 (N.Y. 2006). However, Sidener points to no specific action by Hotels.com that prevented him from discovering his claim and filing a timely suit. The complaint does not allege facts that warrant equitable tolling.

(b) Conversion

Even if Sidener's conversion claim were timely, it still lacks merit for the same reasons that Lamattina's conversion claim fails. Like Lamattina's claim, Sidener's conversion claim is governed by Texas law as required by the User Agreement's choice-of-law clause. Sidener has

not pleaded facts to support two essential elements of a cause of action for conversion in Texas: (1) that he gave the money to Hotels.com with the intent that it be segregated, and (2) that he delivered the money to Hotels.com for safe keeping. Newsome, 940 S.W.2d at 161. As was true with Lamattina, Sidener has failed to identify the allegedly converted funds as a "specific chattel." Id. So even if the limitations period were equitably tolled, Sidener's fourth cause of action would have to be dismissed.

### (3) Chiste's conversion claims against Expedia and Priceline

#### (a) Applicable Law

Chiste's Expedia claims are governed by the 2007 Expedia User Agreement—the agreement in effect when he used expedia.com. The choice-of-law provision in the User Agreement states that "this Agreement is governed by the laws of the State of Washington." (Declaration of Timothy MacDonald ("MacDonald Decl.") Ex. A.) Unlike the language in Lamattina's User Agreement, the language here limits the application of Washington law to disputes regarding the User Agreement. Thus, Washington law applies to Chiste's breach-of-contract claim against Expedia.

In New York, tort claims are outside the scope of a choice-of-law provision when the provision only specifies what law governs construction of the terms of the agreement. Fin. One Pub. Co., 414 F.3d at 335. Chiste's conversion and breach-of-fiduciary-duty claims (the tort claims) are governed by Virginia law, because that is where the alleged tort occurred. See White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 284 (2d Cir. 2006). If no conflict exists between Virginia and New York law, this Court may apply New York law. See Fin. One. Pub. Co., 414 F.3d at 331; Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006).

Chiste's Priceline claims are governed by the User Agreement in existence when he visited priceline.com in November 2006. The User Agreement in existence during that time states that Delaware law applies. The choice-of-law clause simply states, "The internal laws of the State of Delaware shall govern the performance of this Agreement." As was true with Chiste's User Agreement with Expedia, the choice-of-law provision in Priceline's User Agreement is not broad and limits application of Delaware law to contract disputes. See Fin. One Pub. Co., 414 F.3d at 333. Thus, Chiste's breach-of-contract claim against Priceline is governed by Delaware law, but his tort claims (against Priceline and Expedia) are governed by Virginia law. Id.; see also White Plains Coat & Apron Co., 460 F.3d at 284.

(b) Conversion

In Virginia, "Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." Economopoulos v. Kolaitis, 528 S.E.2d 714, 719 (Va. 2000). Money is subject to a claim for conversion if the money can be described as a "specific, tangible item." MarTech Mech., Ltd. v. Chianelli Bldg. Corp., 2001 WL 1262387, at *6 (Va. Cir. Ct. Mar. 6, 2001). Chiste claims he is entitled to "damages in an amount to be determined according to proof at the time of trial . . . ." (Hotels.com Compl. ¶ 71.) But this allegation does not identify the specific and tangible fund of money that Chiste believes Expedia and Priceline converted. As the court in MarTech noted, if plaintiff is successful in his suit, "any form of payment would satisfy the judgment, and could properly come from any source whatever. In essence, a dollar is a dollar as far as Plaintiff's judgment is concerned, and no specific dollar is sought as being converted." 2001 WL 1262387, at *6.

33

Here, Chiste has broadly alleged that he is entitled to "damages" but has not alleged ownership over a specific fund of money. For the same reason that Lamattina's claim failed under Texas law, Chiste's claims for conversion against Priceline and Expedia fail under Virginia law. Chiste's fourth causes of action against Priceline and Expedia are dismissed.

*(4) Schroud's and Gutman's conversion claims against Priceline*

(a) Applicable Law

Schroud's breach-of-contract claim is evaluated under Connecticut law, as required by the choice-of-law provision in effect when Schroud used priceline.com in October 2007. However, the User Agreement contains only a limited choice-of-law clause: "The internal laws of the State of Connecticut shall govern the performance of this Agreement." Consequently, Schroud's tort claims will be analyzed under Illinois law (where the alleged tort occurred).

Gutman's choice-of-law clause in his User Agreement with Priceline is identical to the choice-of-law clause in Schroud's agreement. Thus, Connecticut law applies to Gutman's breach-of-contract claim and Colorado law applies to his tort claims.

(b) Conversion

Schroud's conversion claim is governed by Illinois law because, as explained, Schroud is an Illinois resident and the alleged tort occurred in that state. See White Plains Coat & Apron Co., 460 F.3d at 284. Gutman is a Colorado resident and, consequently, Colorado law applies to his conversion claim. The tort of conversion is treated similarly in both states.

Conversion is "any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." Rhino Fund, LLLP v. Hutchins, 215 P.3d 1186, 1195 (Colo. App. 2008) (Colorado law); see also Cirrincione v. Johnson, 703 N.E.2d 67, 70 (Ill. 1998) (Illinois law); Eggert v. Weisz, 839 F.2d 1261, 1264 (7th Cir. 1988) (Illinois law).

"A plaintiff must show that he had a right to a specific fund or specific money in coin or bills" to plead a conversion claim for money. Horbach v. Kaczmarek, 288 F.3d 969, 978 (7th Cir. 2002) (Illinois law) (internal quotation marks and citations omitted); see also Rhino Fund, 215 P.3d at 1195 (Colorado law).

Schroud and Gutman argue that they have identified the specific funds that were converted: specifically, "the Tax Delta, the Mark-up and the fee calculated on the fees[8] as constituting monies that did belong and properly belong to Plaintiffs and which Defendants, through their wrongful actions and omissions, have converted for their sole use and benefit."

But Schroud and Gutman have not pled ownership rights to a specific sum of money. Rather, they broadly allege that they were overcharged for certain fees and taxes. (See Priceline Compl. ¶ 70.) Even their allegation as to the damages they suffered is generic, and states that damages will be determined at trial. (Id. ¶ 71.) Nowhere do they point to money that is identifiable as a specific chattel—a sum of money that is located somewhere, in an identifiable place or account. Their claims too are claims for a generic sum of money not identified in the complaint as a specific, determinate amount. Horbach, 288 F.3d at 978 (Illinois law); see also McCammon-Chase v. Circle Family Care, Inc., 2010 U.S. Dist. LEXIS 74435, at *14 (N.D. Ill. July 23, 2010) (Illinois law); Rhino Fund, 215 P.3d at 1195; Glenn Arms Assocs. v. Century Mortgage & Inv. Corp., 680 P.2d 1315, 1317 (Colo. App. 1984). Consequently, Schroud and Gutman's fourth cause of action for conversion against Priceline is dismissed.

---

[8] As previously explained, the Plaintiffs allege that Defendants calculated their service fee as a percentage of the Retail Rate, which already included a mark-up or "facilitation fee." (Priceline Compl. ¶ 35.6.) The additional and separate "service fee" is therefore a "'fee calculated on a 'fee.'" (Id.)

35

## IV. Plaintiffs' Fifth Causes of Action For Breach of Fiduciary Duty Are Dismissed As To All Plaintiffs Except Schroud.

Plaintiffs allege that Defendants breached their fiduciary duty, because as travel agents, Defendants are required to act in the consumers' best interest. Plaintiffs assert that Defendants' practices of (1) retaining the Tax Delta and (2) charging fees and mark-ups was a breach of that duty. Plaintiffs argue that, as fiduciaries, Defendants were not able to both earn a profit and charge a fee for their services without disclosing it to consumers.

*(1) Lamattina's fiduciary-duty claim against Hotels.com*

Texas courts recognize that certain relationships give rise to a fiduciary duty. See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 593–94 (Tex. 1992) (citing cases where a fiduciary relationship has been recognized). Apart from formal relationships that give rise to a fiduciary duty, such as between a principal and agent or attorney and client, certain informal relationships may also give rise to that duty. Id. Informal relationships that give rise to a fiduciary duty are called "confidential relationships" and occur "where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one." Id. at 594 (quoting Fitz-Gerald v. Hull, 237 S.W.2d 256, 261 (Tex. 1951)). "Because not every relationship involving a high degree of trust and confidence rises to the stature of a formal fiduciary relationship, the law recognizes the existence of confidential relationships in those cases 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed.'" Id. (quoting Texas Bank & Trust Co. v. Moore, 595 S.W.2d 502, 507 (Tex. 1980)). "Although we recognize that the existence of a confidential relationship is ordinarily a question of fact, when the issue is one of no evidence, it becomes a question of law." Id. (citing Thigpen v. Locke, 363 S.W.2d 247, 253 (Tex. 1962)).

A fiduciary relationship is not necessarily established by the presence of a contract: "[A] party to a contract is free to pursue its own interests, even if it results in a breach of that contract, without incurring tort liability." Id. "The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship." Id. (internal citations omitted).

For Lamattina to succeed on her breach-of-fiduciary-duty claim, "there must exist a fiduciary relationship between the plaintiff and defendant, the defendant must have breached its fiduciary duty to the plaintiff, and the defendant's breach must result in injury to the plaintiff, or benefit to the defendant." Punts v. Wilson, 137 S.W.3d 889, 891 (Tex. App. 2004).

Lamattina asserts no fact from which one could conclude that a formal fiduciary relationship exists between herself and Hotels.com. The User Agreement expressly states that "no joint venture, partnership, employment, or agency relationship" results from a consumer's use of hotels.com to reserve a hotel room. The only allegation in the Complaint from which to infer that there was a fiduciary relationship states that "Travel Agents have a fiduciary obligation to act in accordance with the highest and truest principles of morality." (Hotels.com Compl. ¶ 76.) But Texas courts have never held that travel agents are fiduciaries, and, in any event, no allegation of fact in the complaint suggests that hotels.com could be considered a travel agent.

Moreover, Lamattina has not pled any facts from which to infer that an informal or confidential relationship developed between herself and Hotels.com. The parties' interactions were limited to Lamattina's use of the Hotels.com website to make her hotel reservation. Lamattina does not allege that Hotels.com "stood in a relationship of confidence" before, during,

37

or after her use of the website. See Mullins v. Testamerica, Inc., 2002 WL 460230, at \*3 (N.D. Tex. Mar. 25, 2002). To infer that a confidential relationship developed, there must be factual allegations that support a finding that "a relationship of confidence existed between the parties 'before, and apart from, the agreement made the basis of the suit.'" Id. at \*3. "[T]he fact that the parties to a transaction trust one another will not, in and of itself, establish a finding of a confidential relationship." Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 177 (Tex. 1997).

Lamattina's breach-of-fiduciary-duty claim in her fifth cause of action against Hotels.com is dismissed.

### (2) Sidener's breach-of-fiduciary-duty claim against Hotels.com

In Wisconsin, a breach-of-fiduciary-duty claim is subject to a two-year statute of limitations. Lewis v. Paul Revere Life Ins. Co., 80 F. Supp. 2d 978, 1004 (E.D. Wis. 2000); see also Wis. Stat. Ann. § 893.57 (West 2006). As discussed with regards to Sidener's conversion claims, New York applies the shorter statute of limitations period and, in New York, fiduciary-duty claims have a three-year or six-year limitations period, depending on the relief sought. See Kaufman v. Cohen, 760 N.Y.S.2d 157, 164 (N.Y. App. Div. 2003). Thus, the shorter two-year period under Wisconsin law applies to Sidener's claim.

In Wisconsin, the fiduciary-duty claim accrues "when the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." Lewis, 80 F. Supp. 2d at 1004; see also Hansen v. A.H. Robins, Inc., 335 N.W.2d 578, 583 (Wis. 1983). "The reasonable-diligence test is an objective one." Doe 67C v. Archdiocese of Milwaukee, 2004 WL 1698063, at \*1 (Wis. Ct. App. July 30, 2004). "Embedded in the duty to exercise reasonable diligence is the duty to inquire." Id.

38

Sidener does not argue that his claim for breach of fiduciary duty was undiscoverable at the time he made his hotel reservation on hotels.com. The Hotels.com User Agreement warns consumers that a fee is charged and amounts in excess of taxes actually owed may be collected by Hotels.com. The invoice Sidener received also shows that Hotels.com collects a fee. Either disclosure should have triggered an objectively reasonable consumer's "duty to inquire." Thus, Sidener's fiduciary-duty claim should have been discovered, with the exercise of reasonable diligence, at the time he made his reservation using hotels.com in November 2004. Consequently, his breach-of-fiduciary-duty claim expired around November 2006. Sidener did not file his complaint until December 2008. As a result, his breach-of-fiduciary-duty claim asserted in his fifth cause of action is dismissed as untimely.

Additionally, even if Sidener's claim were timely, it would nonetheless fail for the same reasons that Lamattina's breach-of-fiduciary-duty claim fails. Sidener's claim, like Lamattina's, is governed by Texas law, and Texas courts have never held that travel agents are fiduciaries. Moreover, Sidener also has not pled any facts from which to infer that any informal or confidential relationship developed between himself and Hotels.com so as to create a fiduciary duty.

Accordingly, Sidener's fifth cause of action is dismissed as untimely. Even if the statute of limitations were tolled, Sidener's fifth cause of action would nonetheless be dismissed for failure to state a claim upon which relief may be granted.

### (3) *Chiste's fiduciary-duty claim against Priceline and Expedia*

Chiste's breach-of-fiduciary-duty claims against Priceline and Expedia are governed by Virginia law. In Virginia, "A party may bring a claim for breach of fiduciary duty only where the duty breached is a common law duty and 'not one existing between the parties solely by

virtue of the contract.'" HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt Inc., 2010 U.S. Dist. LEXIS 89482, at \*40 (E.D. Va. 2010) (quoting Augusta Mut. Ins. Co. v. Mason, 645 S.E.2d 290, 293, 295 (Va. 2007)). "Where there is a 'typical business relationship' without evidence that the parties 'intended to create a fiduciary relationship,' the court may not create one." Id. at \*41 (quoting Vicente v. Obenauer, 736 F. Supp. 679, 695 (E.D. Va. 1990)). As was the case with Lamattina, Chiste's relationship with each of Expedia and Priceline was a business relationship governed by the User Agreements (which expressly disclaimed any sort of confidential or fiduciary relationship), and was limited to Chiste's use of both websites to make his reservations. Apart from Chiste's conclusory allegation that Expedia and Priceline are travel agents, there is nothing else from which to infer that a fiduciary relationship existed—and since the facts alleged in the complaint do not support an inference that Expedia and Priceline are travel agents, the conclusory allegation is insufficient on its face.

Chiste's breach-of-fiduciary-duty claims against Expedia and Priceline are dismissed.

### (4) *Gutman's fiduciary-duty claim against Priceline*

Gutman's fiduciary-duty claim against Priceline is governed by Colorado law. Colorado law recognizes the existence of a fiduciary relationship "between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation[ship]." Brodeur v. Am. Home Assurance Co., 169 P.3d 139, 151 (Colo. 2007) (quoting Moses v. Diocese of Colorado, 863 P.2d 310, 321 (Colo.1993) (alteration in original)). Although it is possible for a fiduciary relationship to arise "where one party occupies a superior position relative to another[,] . . . an unequal relationship does not automatically create a fiduciary duty." Id. (internal citations omitted). To be liable, "the superior party must assume a duty to act in the dependent party's best interest." Id. Colorado has not recognized a fiduciary

40

relationship between a consumer and a travel agent. For the reasons discussed above—including the fact that Priceline's User Agreement disclaims any formation of an agency relationship—Gutman's claim for breach of fiduciary duty is also fatally deficient.

### (5) *Schroud's fiduciary-duty claim against Priceline*

Schroud's fiduciary-duty claim against Priceline is governed by Illinois law.

Illinois law recognizes a fiduciary relationship between a travel agent and a consumer in certain circumstances. "A travel agent is a special agent, akin to a broker, which engages in a single business transaction with the principal." United Airlines, Inc. v. Lerner, 410 N.E.2d 225, 228 (Ill. App. 1980). A travel agent "owes duties of service and due care to the principal." Id. "While there is no duty of investigation, the travel agent must disclose all information the agent learns which is material to the object of the agency." Id.; see also Kruempelstaedter v. Sonesta Int'l Hotels Corp., 2000 U.S. Dist. LEXIS 11453, at *4 (N.D. Ill. July 28, 2000). One Illinois case addressing the question of a travel agent's fiduciary obligations explained that "if a[] [travel] agent has a conflict of interest or some interest that would be adverse to the client or affect the client's decision, the agent must disclose that fact to the client." Krautsack v. Anderson, 861 N.E.2d 633, 640 (Ill. 2006).

Here, Schroud alleges that Priceline acted as his travel agent and, that as a travel agent, Priceline owed him a fiduciary duty to either earn a profit or charge a service fee (but not both), and that Priceline breached that duty when it failed to disclose that it both earns a profit on all hotel reservations as well as collects a fee for its service. (Priceline Compl. ¶¶ 75, 77). Additionally, Schroud alleges that he used priceline.com because he believed it was the lowest-cost provider of hotel rooms. (Id. ¶ 80.) Thus, Schroud alleges that Priceline's practice of collecting both a fee and earning a profit—making Priceline more expensive than reserving a

41

room directly from a hotel—was "material information" to the agency that should have been disclosed. United Airlines, Inc., 410 N.E.2d at 227–28.

Whether the facts alleged in the complaint make Priceline a "travel agent" under Illinois law appears to raise a question of first impression that is best reserved for an Illinois court. This is an uncharted area of Illinois law and, therefore, principles of comity and federalism counsel against this Court deciding the issue. Moreover, this is not the situation for which diversity jurisdiction was created—where an out-of-state plaintiff sues a local defendant. See Minot v. Eckardt-Minot, 13 F.3d 590, 593 (2d Cir. 1994). Here, both the plaintiff (Schroud) and the defendant (Priceline) are from out-of-state, and the governing law is that of another state.

Thus, because this claim is peculiar to Illinois law (which differs from the law of this forum, New York), and because none of the parties is from New York and because the contract in this case was made in Illinois, not New York, it appears that this case should not be dismissed, but rather transferred to a district in Illinois, so it can be adjudicated by a court more familiar with Illinois' unique treatment of travel agents.

Schroud has fourteen days to provide the Court with some reason why what remains of his case (which is this lone claim) should not be transferred to Illinois (and to identify the district in Illinois where he resides).

## V.     Plaintiffs' Sixth Causes of Action For Breach Of Contract Are Dismissed

### *(1) Lamattina's breach-of-contract claim against Hotels.com*

Under Texas law, a plaintiff asserting a breach-of-contract claim must plead "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Resurgence Fin., LLC v. Taylor, 295 S.W.3d 429, 433 (Tex. 2009).

42

Lamattina does not allege that Hotels.com breached the User Agreement by taking her money and not giving her a hotel room. Nor does she allege that it breached the agreement by charging her anything other than what she agreed to pay in her online transaction. Instead, Lamattina argues that Hotels.com breached the User Agreement: "(1) by engaging in deceptive practices as described in the Complaint, including by collecting Taxes in excess of that required by the tax enabling statutes and (2) by using the merchant business model when the Agreement explicitly states that [Hotels.com] is not a co-vendor (thereby implying the travel agency relationship)." (Lamattina's Br. In Opp. To Mot. To Dismiss, 23.) Put otherwise, Lamattina argues that the User Agreement prohibits Hotels.com from collecting taxes in excess of the amount required by law.

The relevant terms of the agreement read as follows:

> The tax recovery charge is assessed to recover the amount we pay to the hotel in connection with your reservation for sales and use, occupancy, room tax excise tax, value added and other similar taxes etc., and the balance of the additional amount is a fee we charge in connection with the handling of your reservation. Our service fee varies based on the amount and location of your reservation.

> We are not the vendor collecting and remitting said tax to the applicable tax authorities. The vendors bill all applicable taxes to us and we remit such tax directly to the vendor. We are not a co-vendor associated with the vendor with whom we book or reserve our customer's travel arrangements. Taxability and the appropriate tax rate vary greatly by location. Our actual tax cost paid to the vendor may vary from the tax recovery charge, depending upon the rates, taxability, etc. in effect at the time of the actual use of the hotel, automobile, etc. by our customer.

(Dumaine Decl. Ex. B.)

Given this language, Lamattina's argument fails. The User Agreement provides that Hotels.com will collect a "tax recovery charge" that could differ from the tax recovery charge ("Our actual tax cost paid to the vendor may vary from the tax recovery charge…"), and also

discloses that any "additional amount" (*i.e.*, by which the tax actually paid turns out to be less than the tax collected) will be kept as a handling fee. Thus, the User Agreement clearly and plainly discloses that the tax recovery charge is not necessarily congruent with the amount that hotels.com remits to the hotel to cover taxes actually charged for the customer's use of the hotel room. No fact is alleged that would support a claim of breach of a contract with those terms. As discussed above, Hotels.com's disclosure about taxes may be deceptive (in that it does not actually disclose that the "taxes" collected will *always* (not sometimes) be higher than the taxes remitted to the state), but it creates no contract that was breached.

Lamattina's argument that Hotels.com breached the User Agreement by operating under the merchant model is equally unpersuasive. In order to prevail on this argument, Lamattina would need to show that the User Agreement required Hotels.com to act as an agent. But the User Agreement specifically refutes such a notion: "You agree that no joint venture, partnership, employment, or agency relationship exists between you and the Company as a result of this agreement or use of this website." (Dumaine Decl. Ex. B.) Lamattina alleges that "Defendants' actions, including (but not limited to) the articulation of the fees, taxes and other amounts due on the online invoice and the agreement with the consumer when he/she purchases a room, constitute Defendants' representing themselves to be agents of the consumer." (Hotels.com Compl. ¶ 8.) This conclusory allegation is insufficient to allege a breach of contract where the contract specifically refutes the notion that an agency relationship exists.

Finally, Lamattina alleges that Hotels.com breached the agreement because, by operating under the merchant model, it acted as a vendor despite the statement in the User Agreement that Hotels.com does "not act as co-vendors with the supplier [the hotel] with whom" reservations are made. (Id. ¶ 88.) But Lamattina has not pled that she suffered any damages as a result. A viable

44

breach of contract claim requires a plaintiff to plead facts from which to infer that damages were suffered by the plaintiff *as a result of the breach.* Valero Mktg. & Supply Co. v. Kalama Int'l, 51 S.W.3d 345, 351 (Tex. App. 2001). Nothing alleged by Lamattina supports an inference that she suffered any quantum of damages because Hotels.com used the merchant model to operate its business. Lamattina's vague allegation that she was damaged "in an amount to be determined at the time of trial," (Hotels.com Compl. ¶ 90), falls short of pleading an element of a breach-of-contract claim. See Redden v. Smith & Nephew, Inc., 2010 U.S. Dist. LEXIS 75242, at **11–13 (N.D. Tex. July 26, 2010).

Consequently, Lamattina's breach-of-contract claim asserted in her sixth cause of action is dismissed.

### (2) *Sidener's breach-of-contract claim against Hotels.com*

Breaches of contract claims in Wisconsin and New York have a six-year limitations period. Wis. Stat. Ann. § 893.43; N.Y. C.P.L.R. § 213(2); see also Nat'l Urban Ventures, Inc. v. City of Niagara Falls, -- N.Y.S.2d -- , 2010 WL 4540653, at *1 (N.Y. App. Div. Nov. 12, 2010); Mnuk v. Harmony Homes, Inc., -- N.W.2d -- , 2010 WL 294321, at *4 (Wis. Ct. App. July 29, 2010). Sidener's breach-of-contract claim is his only timely claim, because it was filed in December 2008, which is four years and one month after he used hotels.com in November 2004 to make his hotel reservation.

Sidener's breach-of-contract claim is based on language in his User Agreement which is identical to the language in Lamattina's agreement, and Sidener's allegations are identical to Lamattina's. Thus, Sidener's breach-of-contract claim is dismissed for the same reasons that apply to Lamattina's claim.

45

*(3) Chiste's breach-of-contract claim against Expedia*

The Expedia User Agreement provides, in relevant part:

> You acknowledge that Expedia pre-negotiates certain room rates with hotel suppliers to facilitate the booking of reservations on your behalf. The room rate displayed on the Website is a combination of the pre-negotiated room rate for rooms reserved on your behalf by Expedia and the facilitation fee retained by Expedia to compensate us for our services. You authorize Expedia to book reservations for the total reservation price, which includes the room rate displayed on the Website, plus tax recovery charges, and service fees. . . .

> You acknowledge that Expedia does not collect taxes for remittance to applicable taxing authorities. The tax recovery charges on prepaid hotel transactions are a recovery of the *estimated transaction taxes* (e.g. sales and use, occupancy, room tax, excise tax, value added tax, etc) that Expedia pays to the hotel supplier in connection with your hotel reservations. The hotel suppliers invoice Expedia for tax amounts. The Hotel suppliers remit applicable taxes to the applicable supplier with whom we book or reserve our customer's travel arrangements. Taxability and the appropriate tax rate vary greatly by location. The actual tax amounts paid by Expedia to the hotel suppliers may vary from the tax recovery charge amounts, depending upon the rates, taxability, etc. in effect at the time of the actual use of the hotel by our customers. We retain our service fees as compensation in servicing your travel reservation. Our service fees vary based on the amount and type of hotel reservation.

(MacDonald Decl. Ex. A (emphasis added).)

In Washington, "A breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the [plaintiff]." Nw. Mfrs. v. Dep't of Labor, 899 P.2d 6, 9 (Wash. Ct. App. 1995) (citing Larson v. Union Inv. & Loan Co., 10 P.2d 557 (Wash. 1932); Alpine Indus., Inc. v. Gohl, 677 P.2d 166 (Wash. Ct. App. 1981)).

Chiste complains that Expedia breached the User Agreement because it charged him a mark-up, a service fee, and taxes in excess of the amount remitted to the applicable tax authorities. Chiste also complains that Expedia breached the User Agreement by operating under the "merchant model."

First, as was true with Lamattina's breach-of-contract claim, Chiste has not pleaded any facts from which to infer that he was damaged as a result of Expedia's use of the merchant model. Accordingly, Chiste has not pleaded that he was harmed by the breach—an essential element of a breach-of-contract claim. Nw. Mfrs., 899 P.2d at 9.

Second, the User Agreement clearly provides that the room rate that consumers will be charged includes a mark-up retained by Expedia: "The room rate displayed on the Website is a combination of the pre-negotiated room rate . . . and the facilitation fee retained by Expedia to compensate us for our services." (MacDonald Decl. Ex. A.) Although the User Agreement does not disclose the exact amount of the facilitation fee (or mark-up), there is nothing in the User Agreement that requires such disclosure, and it does not (and could not) breach the User Agreement for Expedia to charge such a fee.

Third, the User Agreement also provides that the tax paid by Expedia to the hotels may differ from the amount collected from consumers: "The actual tax amounts paid by Expedia to the hotel suppliers may vary from the tax recovery charge amounts . . . ." (Id.) Thus, the agreement between Chiste and Expedia does not require Expedia to collect taxes in the exact amount it is required to remit to the hotels. (Again, this disclosure may be deceptive, in that it fails to disclose that Expedia always charges more in tax recovery than it pays to the hotel for taxes, but Chiste has no claim for that deception under G.B.L. § 349. He needs to look for his cause of action—and bring it—in a court in some other state.)

Last, although the amount of the fee is not disclosed, nothing in the agreement requires that Expedia disclose that amount. Moreover, the agreement specifically provides that Expedia will retain "our service fees as compensation" thereby warning consumers that a fee is charged.

Thus, Chiste has not provided sufficient factual allegations to support an inference that

Expedia breached the contract. Chiste's breach-of-contract claim asserted in his sixth cause of

action against Expedia is dismissed.

### (4) *Schroud and Gutman's breach-of-contract claim against Priceline*

Schroud and Gutman assert the same breach-of-contract claim raised by Lamattina,

Sidener, and Chiste. The User Agreement provides, in relevant part:

> In connection with facilitating your hotel transaction, we will charge your
> method of payment for Taxes and for Service Fees. This charge includes an
> *estimated amount to recover the amount we pay to the hotel in connection with*
> *your reservation for taxes* owed by the hotel including, without limitation, sales
> and use tax, occupancy tax, room tax, excise tax, value added tax, and/or other
> similar taxes. The amount paid to the hotel in connection with your reservation
> for taxes may vary from the amount we estimate and include in the charge to you.
> *The balance of the charge for Taxes and Service Fees is a fee we retain as part of*
> *the compensation for costs.* The charge for Taxes and Service Fees varies based
> on a number of factors including, without limitation, the amount we pay the hotel
> and the location of the hotel where you will be staying.

Priceline argues that Schroud and Gutman's breach-of-contract claim fails because they

do not identify the contract or the terms of the contract that were breached. Schroud and

Gutman, however, admit that the transaction between Priceline and consumers is governed by a

User Agreement. (Priceline Compl. ¶¶ 27, 85.) They also cite in their complaint the provision

from the User Agreement which explains to consumers that they will be charged certain taxes

and fees. (Id. ¶ 27.)

Priceline's User Agreement provides more clearly than any of the other agreements that

(1) the tax charge is an estimate, (2) Priceline charges a service fee, and (3) any excess tax

collected from consumers will be retained by Priceline as part of that service fee. So the

complaint actually alleges that Schroud and Gutman paid exactly what they were told they would

pay—which means that no breach is alleged. Nothing in the agreement requires that the amount

of the service fee be disclosed, nor is Priceline limited in the total fee it can charge. As a result, Schroud and Gutman's breach-of-contract claim fails for the same reason that Lamattina's and Chiste's claims failed: they do not plead facts that, if proved, would establish a breach. Maloney v. Conn. Orthopedics P.C., 47 F. Supp. 2d 244, 249 (D. Conn. 1999). Thus, for all of the reasons discussed, Schroud and Gutman's breach-of-contract claim asserted in their sixth cause of action is dismissed.

*(6) Chiste's breach-of-contract claim against Priceline*

The User Agreement applicable to Chiste is virtually identical to the one discussed above, except that Gutman's and Schroud's User Agreements state, "The balance of the charge for Taxes and Service Fees is a fee we retain as part of the compensation for costs," while Chiste's User Agreement states, "The balance of the charge for Taxes and Service Fees is a fee we retain as part of the compensation for our services and to cover the costs of your reservation, including, for example, customer service costs." In both cases, the effect of the language is the same: consumers are agreeing that the excess taxes collected by Priceline will be kept by it as a fee. Thus, for the same reasons previously discussed, Chiste's breach-of-contract claim asserted in his sixth cause of action against Priceline is dismissed.

## CONCLUSION

For the reasons discussed, the Court grants, in part, Defendants' motion to dismiss.

Specifically, plaintiff Schultz's suit (No. 08 Civ. 10744) is severed from the other actions and transferred to the Northern District of Texas, per the parties' forum-selection clause. The Clerk of the Court is directed to transmit the file to that district forthwith.

The complaints of plaintiffs Chiste, Sidener, and Gutman (Nos. 08 Civ. 10676 & 08 Civ. 10746) are dismissed in their entirety.

The complaint of plaintiff Lamattina (No. 08 Civ. 10676) is dismissed except for her first cause of action, for deceptive practices under G.B.L. § 349. If she prevails, she may be entitled to declaratory and injunctive relief.

The complaint of plaintiff Schroud (No. 08 Civ. 10746) is dismissed except for his fifth cause of action, for breach of fiduciary duty. Schroud has fourteen days to provide the Court with some reason why what remains of his case should not be transferred to Illinois (and to identify the district in Illinois where he resides).

Plaintiff Peluso (No. 10 Civ. 07522) has fourteen days to file a brief of no more than ten pages explaining why the Court should not dispose of her complaint in the same manner as it has disposed of the cases against the other Defendants—by dismissing all claims. Peluso's G.B.L. § 349 claim will be dismissed for the same reasons that plaintiffs Chiste, Schroud, and Gutman's G.B.L. § 349 claims were dismissed. If appropriate, Peluso may move to transfer her case to an appropriate forum. The Orbitz defendants have the same period—fourteen days—to move for dismissal of Peluso's unjust-enrichment claim (count seven).

Dated: November 15, 2010

U.S.D.J.

BY EFC TO ALL COUNSEL

50